ACCEPTED
01-13-00782-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/2/2015 9:38:58 AM
CHRISTOPHER PRINE
CLERK



1221 McKinney Street, Suite 4500 | Houston, Texas 77010
Phone 713.951.3700 | Fax 713.951.3720
www.beckredden.com

**DAVID M. GUNN**
BOARD CERTIFIED ♦ CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
4/2/2015 9:38:58 AM 6290
dgunn@beckredden.com
CHRISTOPHER A. PRINE
Clerk

April 2, 2015

Re:     No. 01-13-00782-CV; *Bandier Realty Partners, LLC and Switchback Ventures, LLC v. SSC Opportunity Partners, LLC and Douglas Britton*
Trial Court Cause No.: 2011-43194

*__Via Efiling__*

Mr. Christopher H. Prine, Clerk
First Court of Appeals
301 Fannin, Room 208
Houston, Texas 77002-2066

Dear Mr. Prine:

This case is set for submission on April 14, 2015. Appellants respectfully submit this letter to advise the Court of a recent decision. Please distribute copies of this letter to Justices Keyes, Bland and Massengale.

The decision is *National Property Holdings, L.P. v. Westergren*, 58 Tex. Sup. Ct. J. 204 (Jan. 9, 2015) (copy attached as Exhibit A). Like this case, it involves (1) a real estate dispute, (2) a release, and (3) an effort to avoid the release through allegations of fraudulent inducement.

The party who signed the release claimed that he signed it "in a hurry." *Id*. at 206. But the Supreme Court held that there was no justifiable reliance: "Westergren chose not to read the release before he signed it in the presence of a notary and instead relied on Plank's representations regarding its contents. We hold that, as a matter of law, that reliance was not justifiable." *Id.* at 206.

The decision matters because Appellants have challenged justifiable reliance. Plaintiff SSC says that it signed the release without "time to review adequately or to suggest changes." Br. of Appellees at 32; *see id.* at 33 n.20 ("extremely limited amount of time"). That argument is foreclosed by the Supreme Court's *Westergren* decision. *Westergren* has become final, and the mandate has issued. Under *Westergren*, this Court should reverse and render.

1693.001/558252

Mr. Christopher H. Prine, Clerk
First Court of Appeals
April 2, 2015
Page 2


       Thank you for your courtesy and assistance.

                                   Respectfully submitted,

                                   /s/ *David M. Gunn*

                                   David M. Gunn
                                   Counsel for Appellants

DMG/ig
Enclosure

cc:     All Counsel of Record (*Via Efiling*)

# Tab A

**NATIONAL PROPERTY HOLDINGS, L.P., MICHAEL PLANK AND RUSSELL PLANK**

**vs.**

**GORDON WESTERGREN**

No. 13-0801

From Harris County, Fourteenth Court of Appeals District.

(Opinion of the Court of Appeals, 409 S.W.3d 110.)

Under the provisions of Rule 59.1, Texas Rules of Appellate procedure, the petition for review is granted and, without hearing oral argument, the judgment of the Court of Appeals is affirmed in part and reversed in part and the judgment of the trial court is reinstated. (Per Curiam opinion.)

For Petitioners: Haynes & Boone LLP, Mark Ryan Trachtenberg, Michael J. Mazzone and Polly Benton Graham, Houston, Texas.

For Respondent: Provost Umphrey Law Firm LLP, John Andrew Cowan and Mark C. Sparks, Beaumont, Texas.

**PER CURIAM**

This dispute involves a mediated settlement agreement, an oral side agreement, and a subsequent written release. A pivotal issue is whether Gordon Westergren released his claims for breach of the oral side agreement or whether, as he insists and the jury found, he was fraudulently induced into signing the release. On that issue, we conclude that Westergren's fraudulent inducement defense must fail as a matter of law because the record conclusively establishes that he had a reasonable opportunity to read the release before he signed it and elected not to do so. We also conclude that the oral side agreement did not satisfy the statute of frauds and that Westergren did not breach the mediated settlement agreement or the release by filing this suit. For these reasons, we reverse in part and affirm in part the court of appeals' judgment and reinstate in part the trial court's take-nothing judgment and award of costs.

The facts giving rise to the parties' claims relate to a 190-acre tract of land in La Porte, Texas. The parties hotly dispute the facts, but because we are reviewing the reversal of a judgment notwithstanding a jury verdict in favor of Westergren, we "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009) (quoting *Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007)). The evidence favoring the jury verdict establishes that Westergren was the first to enter into an option contract to purchase the highly desired property. When he discovered that the owner had later entered into similar option contracts with two other interested buyers, he sued all three and filed a *lis pendens* against the property, preventing any further development or sale (the Haynsworth litigation). The three defendants appeared and filed counterclaims. Meanwhile, several developers, including National Property Holdings, L.P. (NPH), were also interested in acquiring the property but could not pursue it while the Haynsworth litigation remained pending. In an apparent attempt to overcome that obstacle, Russell Plank, who was NPH's consultant, contacted Westergren's attorney and offered to help pay Westergren's attorney's fees in the Haynsworth litigation. When asked why NPH would do that, Plank replied: "[because] we're going to be partners." Consistent with Plank's call, NPH and Plank each sent Westergren's attorney a $5,000 check.

When the lawsuit later went to mediation, Plank attended on behalf of NPH, although NPH was not a party to the suit. The mediation was successful: NPH agreed to purchase the property, and all defendants agreed to release their rights to the property and their counterclaims against Westergren. All of the parties later memorialized the settlement in a written Mediated Settlement Agreement (MSA), in which Westergren and the defendants agreed to release any *lis pendens* and all claims asserted by and between the parties, including any cross-claims and counterclaims, and NPH agreed to purchase the property. Separately, in exchange for Westergren's agreement to settle the lawsuit, release the *lis pendens*, and allow NPH to purchase the property, Plank orally promised Westergren that he would become a partner with Plank and his brother Michael, who was president of NPH's corporate general partner, and would receive $1 million plus an interest in the profits from NPH's development and future sale of the property (the oral contract). The MSA did not memorialize the oral promises that Plank made to Westergren. After Westergren released the *lis pendens* and the parties dismissed the suit, NPH and an affiliated company purchased the property. A few months later NPH sold 20 of the 190 acres. When Westergren asked for the promised $1 million and a share of the profits, Plank replied that they could only pay Westergren $500,000 "right now."

When Plank and Westergren later met, Plank presented a $500,000 check from NPH, and in return, Westergren signed a release. The title of the document, stated in bold and underlined capital letters, read "**AGREEMENT AND RELEASE**." The release stated that Westergren agreed to relinquish any and all interest in the property and all claims against NPH, Michael Plank, and other listed parties in exchange for the total payment of $500,000. Without reading the release, Westergren signed it in front of a notary and accepted the check. Several months later, after Westergren had not received any additional payments, he re-

viewed the release and discovered what he had signed. When NPH, Plank, and Plank's brother Michael (collectively, the Plank parties) refused to make any additional payments, Westergren filed this suit against them, asserting claims for breach of the oral contract, breach of partnership duties, common law and statutory fraud, and attorney's fees. The Plank parties asserted that Westergren had released all claims by signing the release and that the oral contract was unenforceable under the statute of frauds. They also filed counterclaims for breach of contract, asserting that Westergren breached the MSA and the release by filing this suit against them.

The jury found in Westergren's favor on all claims, although it also found that the Plank parties' statutory and common law fraud caused Westergren "$0.00" damages. On the Plank parties' motion, however, the trial court granted a judgment notwithstanding the verdict and entered a take-nothing judgment as to all parties, assessing costs against Westergren. Westergren appealed and the Plank parties filed cross-appeals. With one justice dissenting, the court of appeals concluded, *inter alia*, that there was more than a scintilla of evidence to support the jury's findings that (1) an oral contract existed between Westergren and Plank, (2) Plank breached the oral contract, (3) NPH paid the $500,000 pursuant to the oral contract (not as consideration for the release), (4) this partial performance excepted the oral contract from the statute of frauds, (5) Plank fraudulently induced Westergren to sign the release, and (6) Westergren did not breach the MSA or the release by suing the Plank parties. Having found in Westergren's favor on his breach of contract claim, the court concluded that it did not need to address his claims for common law and statutory fraud and for breach of partnership duties. The court awarded costs to Westergren and remanded the case for a new trial on Westergren's claim for attorney's fees.

Before this Court, the Plank parties contend that the evidence was legally in-

sufficient to support the jury's finding that Plank fraudulently induced Westergren to sign the release, the release was therefore valid and extinguished all claims under the oral contract, and the jury's related findings are thus irrelevant and cannot support the judgment. To overcome the jury's verdict, the Plank parties must show that there was no evidence to support the jury's finding of fraudulent inducement, no reasonable jury could conclude otherwise, and thus the release was valid as a matter of law. *Tanner*, 289 S.W.3d at 830.

Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). To prove that Plank fraudulently induced him to sign the release, Westergren had to establish that (1) Plank "made a material representation"; (2) Plank's "representation was false and was either known to be false when made or made without knowledge of its truth"; (3) Plank's "representation was intended to be and was relied upon by the injured party"; and (4) Westergren's "injury complained of was caused by the reliance." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 678 (Tex. 2009) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997)); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). The Plank parties argue that there is no evidence to establish the fourth element in this case. Specifically, they contend that no evidence supports a finding that Westergren's reliance on Plank's representations was "justifiable," because the release's plain language conflicted with Plank's representations, and Westergren had ample opportunity to read the release and chose not to do so.

At trial, Westergren admitted that he did not read the release before he signed it and accepted the $500,000 check. Specifically, he explained that:

- In a telephone conversation before the meeting at which Plank delivered the $500,000 check, Plank told Westergren that the check would be payment of the first half of the $1 million that Plank had promised in the oral contract;

- At the meeting, Plank never mentioned that the document was a release, and instead told Westergren that the release "was a receipt. It's nothing. You don't have to worry about it";

- Plank also told Westergren he would get "the other half" of the $1 million when "we get another building coming out of the ground";

- Westergren did not read the release because he was "in a hurry" and did not have his reading glasses with him;

- Although he wore a watch that had a magnifying glass, which he could have used to read the release, he did not use it;

- He did not ask Plank or the notary to read the release to him; and

- Instead, he relied on Plank's statements and representations and signed the release without reading it first.

Under the facts of this case, we agree with the Plank parties that Westergren could not justifiably rely on Plank's statements about the content of the release, which directly conflict with the content of the release itself. On its face, the release's intent and effect is obvious and unambiguous. Consistent with its large, bolded, capitalized, and underlined title ("**AGREEMENT AND RELEASE**"), and utilizing bolded and capitalized key words within its text, the release provided that

> **WESTERGREN** . . . in consideration of the sum of **FIVE HUNDRED THOUSAND AND NO/100ths DOLLARS** ($500,000.00), and other good and valuable consideration, the receipt of which of considerations

being hereby acknowledged and the adequacy of which considerations being hereby confessed, . . . does hereby fully and unconditionally **RELEASE AND FOREVER RELINQUISH** any and all right, title, and/or interest . . . in or to (i) . . . the "**Subject Property**;" . . . (ii) [NPH and certain affiliated companies] (collectively, the "**Owning Entities**"); and (iii) any income, rent, profits, or other proceeds related to [the property or the Owning Entities] . . . (collectively, the "**Income and Proceeds**") . . . .

In addition, and for the same consideration, the receipt of which considerations being hereby acknowledged and the adequacy of which consideration being hereby confessed, Westergren . . . does hereby fully and unconditionally **REMISE, RELEASE AND FOREVER DISCHARGE** . . . **MICHAEL J. PLANK, THE PLANK COMPANIES, INC.**, the Owning Entities, and [others] . . . of and from any and all manner of action and actions, cause and causes of action, and all claims and demands whatsoever, . . . which [Westergren] . . . can, shall or may have for, upon or by reason of any matter, cause [or] occurrence . . . proximately or remotely, from the beginning of the world to and through the day of the date of this release arising out of, relating to, or pertaining in any way, directly or indirectly, to: **(i) the Subject Property; (ii) the Owning Entities; and (iii) the Income and Proceeds**. This release is intended to release all liability described above of any character for damages of any type or nature . . . with respect to the matters released above.

Westergren chose not to read this release before he signed it in the presence of a notary and instead relied on Plank's representations regarding its contents. We hold that, as a matter of law, that reliance was not justifiable.

It is well-established that "[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him." RESTATEMENT (SECOND) OF TORTS § 541 (1977). Thus, as Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms. *See, e.g., Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962) ("In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests . . . . [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party.") (citation omitted). This is particularly true when the party had a reasonable opportunity to review the written agreement but failed to exercise ordinary care to do so. *See Tex. & Pac. Ry. Co. v. Poe*, 115 S.W.2d 591, 592 (1938) (holding that evidence was legally insufficient to support a finding of fraud where party who relied on oral statement that release was receipt had an opportunity to read the document which plainly identified itself as a release); *see also Thigpen*, 363 S.W.2d at 251.

The court of appeals concluded that Westergren did not have an adequate opportunity to review the release. Under these facts, we disagree. Westergren's testimony conclusively established that he had ample opportunity to read the release but instead chose to rely solely on Plank's representations because he was "in a hurry" and did not have his reading glasses with him.[1] Yet he acknowledged that he

---

[1] The court of appeals thought it relevant that Plank knew that Westergren had an attorney and had communicated with him but did not involve him in the drafting of the Release or send him a copy. 409 S.W.3d at 126–28. While these facts might be relevant to the issue of

could have used the magnifier on his watch or had someone read the document to him, and no evidence indicates that anyone prevented him from doing so. *See* 409 S.W.3d 128, 151 (Frost, J., dissenting) (finding "no legal basis for the majority's conclusion" that Plank used "trickery or artifice" to prevent Westergren from reading the release). Instead of excusing a party's failure to read a contract when the party has an opportunity to do so, the law presumes that the party knows and accepts the contract terms. *See, e.g., Poe,* 115 S.W.2d at 592; *Indem. Ins. Co. of N. Am. v. W.L. Macatee & Sons,* 101 S.W.2d 553, 556 (1937); *cf. In re Lyon Fin. Servs., Inc.,* 257 S.W.3d 228, 232 (Tex. 2008); *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 133–34 (Tex. 2004); *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505 (Tex. 1993). Here, Westergren's decision not to read the release and instead to rely on Plank's representations because he did not have his glasses and was "in a hurry" was not justifiable.

As we have recently observed, it is not the courts' role "to protect parties from their own agreements." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.,* 389 S.W.3d 802, 810–11 (Tex. 2012). Thus, as the United States Supreme Court explained long ago:

It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*Upton v. Tribilcock,* 91 U.S. 45, 50 (1875); *see also Indem. Ins.,* 101 S.W.2d at 556 ("One is presumed to intend what he does or undertakes to do by the terms of a written instrument voluntarily signed by him."). We conclude that Westergren's evidence was legally insufficient to support the jury's finding that he justifiably relied on Plank's representations, and thus constitutes no evidence of fraudulent inducement to negate the release's validity.

However, the parties also dispute the scope of the release. In particular, the jury found that the oral contract was an agreement only between Westergren and Plank, in Plank's individual capacity, and Westergren argues that the release did not release any claims against Plank. We need not resolve this issue, however, because we agree with Plank's alternative argument that the oral contract is unenforceable under the statute of frauds. Under the statute of frauds, "a contract for the sale of real estate" is unenforceable unless it is in writing and signed by the person to be charged. TEX. BUS. & COM. CODE § 26.01. Whether a contract comes within the statute of frauds is a question of law, which we review de novo. *Dynegy, Inc. v. Yates,* 422 S.W.3d 638, 642 (Tex. 2013). Westergren concedes that the contract at issue was for the sale of real estate and was not in writing or signed, but he relies on the "partial performance exception" to the statute of frauds. Under this exception, he contends, an otherwise

---

whether Westergren could *understand* the Release had he read it, we disagree that they could support a conclusion that he had no reasonable opportunity to *read* it. At a minimum, the language of the Release unambiguously made it clear that it was a "**RELEASE**," and that Westergren was releasing all claims to the property and against NPH and Michael Plank related to the property, and there is no basis to conclude that he was incapable of understanding that. In fact, Westergren's ability to understand the Release is not disputed, and his own testimony establishes that he was a sophisticated businessman who had personally participated in many contractual transactions. Any issue over whether he needed help to understand it would be irrelevant when, by his own admission, he made no effort to read it.

unenforceable oral contract becomes enforceable in equity if one party partially performs its obligations and "denial of enforcement would amount to a virtual fraud." Westergren contends that Plank partially performed his obligations under the oral contract by paying half of the promised $1 million payment, and thus the oral contract is enforceable in equity despite the statute of frauds.

Without adopting Westergren's description of the "partial performance exception,"[2] we conclude that, even under his theory, the exception does not apply here. As argued by Westergren, one of the exception's requirements is that the performance on which the party relies must be *unequivocally referable* to the agreement." *Chevalier*, 213 S.W.2d at 533 (emphasis added). In other words, the purpose of the alleged acts of performance

must be to fulfill a specific agreement. If the evidence establishes that the party who performed the act that is alleged to be partial performance could have done so for some reason other than to fulfill obligations under the oral contract, the exception is unavailable.

Westergren contends that Plank's payment of $500,000 constitutes partial performance of the oral contract in which Plank agreed to pay $1 million, and that the payment is "unequivocally referable" only to that contract.[3] This is so, he contends, "because the release itself makes sense only in the context of an attempt to settle Westergren's claims based on the [oral contract]," and "the jury was free to conclude that the only thing the release might plausibly have sought to compromise was the [oral contract] itself." We disagree. The fact that the payment was made to "settle" and "compromise" Westergren's "claims based on the [oral contract]" does not mean it was made in performance of obligations under that contract. To the contrary, it establishes that the payment was made to *avoid* performance of the oral contract. On its face, the release states that Westergren's agreement to release all claims against the property, the "Owning Entities," and all "Income and Proceeds" was made "in consideration of the sum of **FIVE HUNDRED THOUSAND AND NO/100ths DOLLARS** ($500,000.00), and other good and valuable consideration, the receipt of which of considerations being hereby acknowledged and the adequacy of which considerations being hereby confessed." Contrary to Westergren's arguments, the payment cannot be unequivocally referable to the oral contract, because the release that Westergren signed expressly states that it was made in exchange for Westergren's agreement to the release.

---

[2] On the few occasions that this Court has discussed this equitable exception to the statute of frauds, we have made it clear that it requires more than just one party's performance of some obligation under the alleged oral contract. *See, e.g., Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533 (Tex. 1948) (noting that even "'full performance,' in the sense of full payment of the consideration by the purchaser, is held not to make the contract enforceable unless accompanied by other circumstances, such as change of possession and erection of valuable improvements"). For example, we explained that "to relieve a parol sale of land from the operation of the statute of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor; or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. Payment of the consideration, though it be a payment in full, is not sufficient." *Hooks v. Bridgewater*, 229 S.W. 1114, 1116 (Tex. 1921). In light of Westergren's failure to establish that Plank's $500,000 payment was "unequivocally referable" to the oral contract, we need not and do not provide a complete explanation of *all* of the partial performance exception's requirements here.

[3] Westergren also contends that he fully performed the agreement by releasing the *lis pendens* and giving up his contractual right to the property. Like the $500,000 payment, these actions are not unequivocally referable to the oral contract where the MSA explicitly requires these acts by Westergren.

Furthermore, the payment could not be performance of the oral contract because it was made by NPH, which was not a party to the oral contract—but was a party to the release.

To find partial performance of the oral contract, the court of appeals relied upon Plank's oral representation that the payment was the first half of the $1 million owed under the oral contract. A party cannot rely upon oral representations to satisfy the partial performance exception, however. Rather, the kind of performance that justifies the exception to the statute of frauds is "performance which alone and *without the aid of words of promise* is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing." *Chevalier*, 213 S.W.2d at 533 (emphasis added). The statute of frauds "unmistakably declares a policy that parol testimony is too unreliable for proof of certain types of agreement, and courts must give heed to that policy as well as to considerations of an equitable character." *Id.* Therefore, Westergren cannot rely on Plank's oral representations to support a finding that the payment was unequivocally referable to the oral contract. We hold that there is nothing in the nature of these acts that supports a jury finding of partial performance to except the oral contract from the statute of frauds.

In summary, we conclude that there is no evidence to support the jury's findings that Plank fraudulently induced Westergren to sign the release, or that the oral contract is excepted from the statute of frauds.

We now turn to Westergren's tort claims for common law fraud, statutory fraud, and breach of partnership duties. Although the jury found in favor of Westergren on the liability questions for his common law and statutory fraud claims, the jury awarded him no damages for either claim. Westergren did not appeal those findings. He therefore cannot recover damages on his fraud claims. With respect to his partnership claim, we have held that the oral contract in which Plank promised to make Westergren a partner with him and his brother is unenforceable under the statute of frauds. Westergren's claim for breach of partnership duties therefore must fail as well.

Finally, we turn to the Plank parties' argument that the court of appeals erred in affirming the trial court's take-nothing judgment on their counterclaims against Westergren for breach of the release and the MSA. The Plank parties contend that a party who releases a claim and later files suit on that claim necessarily breaches the release agreement. We disagree. Although the Plank parties rely on a number of cases to support their argument, none of those cases reads a covenant not to sue into a release that does not include such a promise. They also rely on one case in which a court stated that a covenant not to sue can be construed as a release, arguing that the reverse must also be true. *See Dicker v. Lomas & Nettleton Fin. Corp.*, 576 S.W.2d 672, 675 (Tex. Civ. App.—Texarkana 1978, writ ref'd n.r.e.) (noting that "an agreement not to sue can be construed as a release"). Westergren, in turn, argues that the release provides only an affirmative defense because it provides only that it "may be pleaded as an absolute and final bar to any or all suit" and does not include an express or implied covenant not to sue or to indemnify the released parties. We must review the MSA and release language to determine whether either agreement includes a contractual obligation not to sue.

The intent of the MSA was to settle the suit between Westergren and the other parties to the initial litigation, who are not before the Court in this case. We find no language in the MSA in which Westergren agreed not to sue the Plank parties. In fact, the agreement contemplates that the parties may bring suit by providing that the parties "may not recover attorney's fees or costs in any litigation brought to construe or enforce this agreement. Otherwise, if unsuccessful, the prevailing party or parties shall be entitled to recover reasonable attorney's fees and expenses." This provision indicates that a

suit may be brought, even though the agreement is in effect, and in no way suggests that filing a suit concerning the MSA's released claims results in a breach. Therefore, Westergren's claims did not breach the MSA.

We also find that the release is unambiguous as to this point. The parties intended the release "to release all liability described" within the agreement. Like the MSA, it includes no language barring Westergren from bringing suit or stating that he would breach the release by doing so. To the contrary, this agreement has a provision stating essentially that should a future suit be brought, the release may be pleaded as an absolute bar to the suit—in other words, it provides the parties with an affirmative defense.[4] *See* TEX. R. CIV. P. 94 (listing affirmative defenses, including release). Although the release provides an affirmative defense to future suits, we cannot construe it as including a covenant not to sue where, in fact, the plain language does not bar future suits. Just as Westergren is bound to the actual language of the release, so are the Plank parties. The court of appeals, therefore, did not err in affirming the trial court's judgment based on the jury verdict in favor of Westergren on the Plank parties' claims for breach of the MSA and release.

We grant the Plank parties' petition for review, and without hearing oral argument, we (1) reverse the court of appeals' judgment as to Westergren's claim for breach of the oral contract, Westergren's claim for attorney's fees, and the trial court's allocation of court costs, (2) reinstate the trial court's judgment that Westergren take nothing on his claims for breach of the oral contract and for attorney's fees and the trial court's taxing of court costs against Westergren, and (3) affirm the court of appeals' take-nothing judgment on Westergren's partnership and fraud claims and on the Plank par-

ties' counterclaims for breach of contract and attorney's fees against Westergren. TEX. R. APP. P. 59.1

**Opinion Delivered:** January 9, 2015

---

[4] The release states that it "may be pleaded as an absolute and final bar to any or all suit or suits pending or which may hereafter be filed or prosecuted."