

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00735-CV

Brian C. **SIMCOE**,
Appellant

v.

Thomas **CHRISTOPHER** and Catrina Christopher,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-15519
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:      Sandee Bryan Marion, Chief Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                 Rebeca C. Martinez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  July 29, 2015

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

This appeal arises from a lawsuit, filed by appellees against appellant, for the breach of an

alleged oral contract to pay for a Chrysler Town and Country van.  Appellant, Brian C. Simcoe, is

the former son-in-law of appellees, Thomas and Catrina Christopher.  The trial court rendered

judgment in favor of the Christophers against Brian,[1] and this appeal by Brian ensued.

---

[1] The Christophers' daughter, Adria Simcoe, was joined to the lawsuit by Brian.  The trial court rendered judgment that the Christophers take nothing against Adria.  Adria is not a party to this appeal, and the Christophers do not appeal the take-nothing judgment.

**BACKGROUND**

There is no dispute that, in 2010, the Christophers purchased the van and a Jeep for Adria Simcoe and Brian Simcoe. At the time, Adria and Brian were married with three children, and Adria was pregnant with their fourth child. Because Brian and Adria could not finance either vehicle on their own, the Christophers provided the financing for both vehicles, with the Christophers signing a five-year promissory note on the van. Catrina Christopher testified that when the two vehicles were purchased, her daughter agreed to make the payments on the Jeep and Brian would make the payments on the van. She said Brian assured her he would make all payments on the van, and once his credit improved, he would have the van refinanced in his name.

In February 2012, Adria filed for divorce, which was finalized on November 5, 2013. Catrina stated that when Adria and Brian decided to dissolve their marriage, Brian was willing to sign a promissory note for the van, but Adria's divorce attorney said he would put the van in Brian's name within six months and there would be no need for a note. Brian returned the van to the Christophers in June 2012. Catrina said that after Brian returned the van, she made one payment and then called the finance company and told them to repossess the vehicle. After the van was repossessed and sold at auction, the remaining debt on the van equaled $18,411.14. Catrina said she and her husband have made some payment towards this debt. Catrina did not believe her daughter was responsible for the payments on the van because Adria was responsible for the payments on the Jeep.

Thomas Christopher testified Adria and Brian would pay for both vehicles, and when the promissory note on the van was either paid off or refinanced, he would place the titles in their name. Thomas stated that, after the divorce, Brian told him Adria would keep the Jeep, he (Brian) would keep the van, and, once the divorce was final, Brian would have the van refinanced within six months.

Adria testified that, during the marriage, she used the Jeep to drive to work, and Brian used the van because he did most of the driving with the children because he was "a stay-at-home disabled veteran." She said that after she and Brian separated, they discussed who would take which vehicle. She stated they agreed Brian would take the van because he was going to move in with his mother and the van could easily seat him, his mother, and the four children. When asked if she and Brian discussed paying off the van early or refinancing the van, Adria responded as follows: "We were in the process of living out in Castroville on about 2 acres. We were renting to own that place at the time. And we had discussed that once we owned it, that we would refinance both vehicles into our names."

Brian testified it was Adria's idea to ask her parents to finance the two new vehicles, which he did not want to do because he liked the two vehicles they already owned.[2] He said the agreement he and Adria made with her parents was that he and Adria would have the use of the two new vehicles as long as they made the payments. He characterized the payments on the van as "a lease, essentially." Brian said he never agreed to assume the debt. When asked if there was ever an understanding that the vehicles would be transferred to his and Adria's name, he said there was never any discussion about who would get the vehicles in the end. He said Thomas threatened to take the van back if he contested the divorce or sought custody of the children. He said he returned the van to the Christophers because he was having difficulty making the payments, and, after Catrina made a Child Protective Services complaint against him, he wanted nothing more to do with the Christophers. Brian testified there was no possibility that he could have paid off the van at any time. He said his only income is his disability income.

---

[2] Neither Adria nor Brian owned the two prior vehicles; one was financed by Adria's aunt and the other by Brian's mother.

On September 20, 2012, the Christophers filed a lawsuit against Brian, alleging the three entered into an oral contract under which Brian agreed to make monthly payments on the van if the Christophers would use their credit to obtain financing. The Christophers alleged they fully performed their contractual obligations by signing a promissory note in the original amount of $32,870.58, but Brian breached the contract by abandoning the vehicle in June 2012 and refusing to make further payments. In addition to other relief, the Christophers sought liquidated damages in the amount of at least $29,277.49.

Brian answered and raised affirmative defenses, including the statute of frauds. Brian also joined Adria to the suit, alleging he was entitled to contribution from her toward any liability that may be found against him as a result of the Christophers' claim against him.

Following a bench trial, the trial court rendered judgment for the Christophers against Brian and awarded the Christophers $18,411.14 in damages, plus attorney's fees. The trial court also rendered a take-nothing judgment against the Christophers as to Adria. On appeal, Brian raises two issues: the evidence is legally insufficient to support the trial court's implied finding that enforcement of the oral contract is not barred by the statute of frauds, and the evidence is legally insufficient to support the trial court's judgment solely against him.

## STANDARD OF REVIEW

The essence of the Christophers' breach of contract claim is that they and Brian orally agreed Brian would continue to make the payments on the van until the promissory note on the van was paid in full or Brian refinanced the van and took title in his name. Brian's defense is that this alleged oral contract is barred by the statute of frauds. The statute of frauds generally renders a contract that falls within its scope unenforceable. TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2015). The party pleading the statute of frauds bears the initial burden of establishing its applicability. TEX. R. CIV. P. 94; *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). Once

that party meets its initial burden, the burden shifts to the opposing party to establish an exception that would take the verbal contract out of the statute of frauds. *Dynegy, Inc.*, 422 S.W.3d at 641. Whether a contract comes within the statute of frauds is a question of law, which we review *de novo*. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 426 (Tex. 2015). However, whether the circumstances of a particular case fall within an exception to the statute of frauds is generally a question of fact. *Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 192 (Tex. App.—Dallas 2013, pet. denied).

"A promise or agreement [to answer for the debt of another person] is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE Ann. § 26.01(a), (b)(2). Brian satisfied his burden of showing that the statute of frauds applied because he was not a party to the five-year promissory note taken out by the Christophers to finance the van, and the alleged agreement between the Christophers and Brian that he assume responsibility for the payments on the van was not in writing or signed by Brian. At this point, the burden shifted to the Christophers to establish an exception to the statute of frauds. At trial, the Christophers raised three exceptions to application of the statute of frauds: performance within one year, partial performance, and main purpose. The Christophers had the burden at trial to establish that one of these exceptions applied.

By rendering a judgment in favor of the Christophers, the trial court implicitly found that one or more of the exceptions applied to take the verbal contract out of the statute of frauds. The trial court did not enter findings of fact or conclusions of law.[3] The purpose of findings of fact or

---

[3] From the bench the trial court stated, "I also find that the case is taken out of the Statute of Frauds by virtue of the fact that it could have been refinanced as the plan was to refinance as soon as [Brian's] credit improved." This may indicate—although we cannot say with any certainty—that the trial court believed the statute of frauds did not apply because the oral contract could be performed within one year. However, oral findings made on the record are not a

conclusions of law "is to 'narrow the bases of the judgment to only a portion of [the multiple] claims and defenses, thereby reducing the number of contentions that the appellant must raise on appeal.'" *Larry F. Smith, Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied) (quoting 6 McDonald & Carlson, Texas Civil Practice 2d § 18:3 (1998)). Here, the Christophers obtained a judgment in their favor, which was based on the trial court's implied finding(s) that they established one or more of the three exceptions to the statute of frauds.

Any one of the exceptions raised by the Christophers would have been sufficient to support the trial court's implied finding that a valid contract existed. However, in his appellate brief, Brian specifically challenges only the performance within one year exception. An appellant must attack all independent bases or grounds that fully support a complained-of ruling or judgment. *Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.); *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.). If an independent ground fully supports the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, we must accept the validity of that unchallenged independent ground, and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment. *Oliphant Fin.*, 295 S.W.3d at 424; *Britton*, 95 S.W.3d at 681. Because Brian did not raise a challenge to all three exceptions, we must affirm the trial court's judgment to the extent the court determined (1) a valid contract was entered into in 2010 under which Brian and Adria would pay

---

substitute for written findings. *In Interest of W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984); *Larry F. Smith, Inc. v. The Weber Co.*, 110 S.W.3d 611, 615 (Tex. App.—Dallas 2003, pet. denied); TEX. R. CIV. P. 296.

for both vehicles until the loans were paid off or refinanced and (2) the contract had been breached.[4]

## JUDGMENT SOLELY AGAINST BRIAN

At trial, Brian asserted he was entitled to contribution from Adria toward any liability that might be found against him. The trial court ordered that the Christophers recover the entirety of the damages resulting from their breach of contract claim from Brian and that they take nothing against Adria. In his last issue, Brian argues the trial court erred in ordering that the Christophers recover their damages and attorney's fees only from him, as opposed to from him and Adria jointly.

In support of the trial court's judgment that only Brian is liable for breaching the agreement to make the payments on the van, the Christophers point to Catrina's testimony regarding an agreement as to who would be responsible for the payments on each vehicle:

> Q. And did you have an agreement with your daughter as to how she would pay, if she would, for the vehicle she would receive?
> A. Yes. She was making payments on it.
> Q. And did you have an agreement with [Brian] as to what, if any, payments he would be responsible for?
> A. He would be responsible for the payments on the van.
> Q. Okay. Was there some discussion between the two of you regarding how the financing [of] the vehicle would be taken care?
> A. They were just going to keep the payments up on both vehicles. . . .[5]

Thomas testified he understood "between the both, they would pay for both vehicles. And when the vehicle was paid off, I would sign title over to them and they would get the title or they

---

[4] On appeal, Brian does not argue, in the alternative, that if a valid contract existed, the evidence is nonetheless insufficient to support the trial court's implied finding that he breached the contract.

[5] Catrina also testified about the alleged agreement by Brian to continue to make payments on the van after the divorce. However, the Christophers sued for breach of an oral contract allegedly entered into in 2010. Therefore, any evidence regarding whether Brian agreed to make payments following the couple's divorce three years later is not relevant. We also note, the divorce decree awarded the Jeep to Adria, but did not mention the van or any debt owed for the purchase of the van.

could refinance it. . . . At the time they were married, that was the agreement, that they would pay their [sic] vehicles." Adria testified as follows about the agreement to pay for both vehicles:

> Q. . . . When this alleged arrangement was made, it wasn't made just with regard to the [van], it was made with regards to both the [van] and the Jeep, correct?
> A. That is correct.
> Q. Was there any distinguishing between the two?
> A. In regards to —
> Q. You're alleging that there's an oral contract that you would pay off both vehicles. Was there any distinguishing between the two, who would pay off what, when, et cetera?
> A. Not at the time we got them because we were still married.
> . . .
> Q. Okay. Would you disagree with me if I said [that Brian] also paid towards the Jeep?
> A. I would disagree with that because if our income is almost equal to a month, then that means where did my paychecks go? So I would say we paid together for both of them.
> Q. Those were community funds that were used during the marriage, correct?
> A. If you want to say community funds, yes.

Obligations of multiple parties to a contract are usually "joint and several." *Pitman v. Lightfoot*, 937 S.W.2d 496, 528 (Tex. App.—San Antonio 1996, writ denied); *see also Inwood Nat'l Bank of Dallas v. Hoppe*, 596 S.W.2d 183, 185 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.) (order requiring husband to pay community debts has no legal effect on the rights of the bank). There is no dispute that both vehicles were acquired during the marriage, and Adria admitted she and Brian agreed to pay for both vehicles, they did not distinguish between the two vehicles for the purpose of making the payments, and they intended to refinance the vehicles "into our names."[6] On this record, we must conclude Brian and Adria were joint parties to the obligations arising under the oral contract to pay for both vehicles. Therefore, Brian was entitled

---

[6] On appeal, the Christophers also contend the trial court's judgment divides the remaining undivided community property of Adria and Brian. We disagree because neither Adria nor Brian filed the appropriate suit for dividing marital property pursuant to the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 9.201 – 9.205 (post-decree proceedings) (West 2006). Therefore, the trial court's judgment was not a post-divorce clarification, modification, or amendment.

to recover on his cross-claim against Adria; therefore, the trial court erred by not granting him the relief he requested in his cross-claim against her.

## CONCLUSION

We affirm the trial court's judgment on the Christophers' breach of contract claim to the extent the trial court found the Christophers were entitled to recover $18,411.14 in damages and $5,000.00 in attorney's fees. We remand the cause to the trial court (1) for a reconsideration of its allocation of the $5,000.00 in attorney's fees in view of our holding that the trial court erred by not granting Brian the relief he requested on his cross-claim against Adria, and (2) to reform the judgment (a) to make Brian and Adria jointly and severally liable for the $18,411.14 in damages arising from the breach of contract and (b) as necessary following its reconsideration of how the $5,000.00 in attorney's fees should be allocated between Adria and Brian.

Sandee Bryan Marion, Chief Justice