**Affirmed as Modified, and Majority and Concurring and Dissenting Opinions filed December 17, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-18-00083-CV

---

### JAMES CONSTRUCTION GROUP, LLC, AND PRIMORIS SERVICES CORPORATION, Appellants/Cross-Appellees

### V.

### WESTLAKE CHEMICAL CORPORATION, Appellee/Cross-Appellant

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2014-72717**

---

## CONCURRING AND DISSENTING OPINION

I agree with the court's analysis of appellants' issues and of appellee/cross-appellant Westlake Chemical Corporation's second cross-issue. I respectfully dissent as to the majority's analysis of Westlake Chemical's first cross-issue.

In sustaining the first cross-issue, the majority holds that Westlake Chemical's agreement that "no claim shall be made by [Westlake Chemical] against [James

Construction Group, LLC] for [consequential] damages" is not a promise not to assert any claim for consequential damages. This court should not sustain the first cross-issue on this basis because, under the agreement's plain language, Westlake Chemical promised not to assert any claim against James for consequential damages and despite this agreement, Westlake Chemical did so.

## The No-Claims Provision

In its first cross-issue, Westlake Chemical challenges the trial court's money judgment in favor of James based on Westlake Chemical's breach of section 26 of the construction contract. Westlake Chemical asserts that this section constitutes a waiver of any claim for consequential damages rather than a covenant not to assert any claim for consequential damages. To analyze this argument, the court must determine the meaning and effect of section 26. This provision, entitled "Waiver of Consequential Damages," contains the following language:

26    **WAIVER OF CONSEQUENTIAL DAMAGES**

Neither [Westlake Chemical] nor [James] shall be liable to the other for any consequential, incidental, indirect or punitive damages of any kind or character, including, but not limited to, loss of use, loss of profit, loss of revenue, loss of productivity, loss of efficiency, or acceleration costs whenever arising under this Contract or as a result of, relating to or in connection with the Work and no claim shall be made by either [Westlake Chemical] or [James] against the other for such damages REGARDLESS OF WHETHER SUCH CLAIM IS BASED OR CLAIMED TO BE BASED ON NEGLIGENCE OR STRICT LIABILITY (INCLUDING SOLE, JOINT, ACTIVE, PASSIVE, CONCURRENT NEGLIGENCE OR GROSS NEGLIGENCE) OR ANY OTHER THEORY OF LEGAL LIABILITY, AND INCLUDING PRE-EXISTING CONDITIONS BUT EXCLUDING GROSS NEGLIGENCE AND WILLFUL MISCONDUCT.[1]

---

[1] Shading added; capitalization and bold in original.

2

The dispute centers on an independent clause (shaded above) consisting of key words of mutual prohibition: "[n]o claim shall be made . . . for [consequential, incidental, indirect or punitive] damages . . ." (the "No-Claims Provision"). Westlake Chemical asserts the parties intended section 26 — including the No-Claims Provision — merely to prevent the parties from recovering on a claim for consequential, incidental, indirect or punitive damages regardless of the legal theory of liability asserted. But the words the parties chose do not support that reading. The No-Claims Provision covers something else.

In section 26, the parties contract for mutual protection from future claims in two ways. In the first clause, they limit any future liability for consequential damages by agreeing that neither will be liable to the other for them (the "Limitation-of-Liability Provision"). In the second clause, they agree that neither will assert a claim for consequential damages against the other. Then, they emphasize that these two protections — the Limitation-of-Liability Provision and the No-Claims Provision — apply regardless of the nature of the claims giving rise to the consequential damages. The majority emphasizes the first clause and ignores the second, effectively erasing the No-Claims Provision from the contract.[2]

Though the majority acknowledges the parties agreed that they "will not be liable to each other for certain types of damages and will make no claims against the other for those proscribed damages regardless of the legal theory offered in support of them,"[3] the majority concludes that Westlake Chemical did not breach the No-Claims Provision by asserting a claim seeking to recover consequential damages.

---

[2] *See Moayedi v. Interstate 35/Chisam Road, L.P.*, 438 S.W.3d 1, 7 (Tex. 2014) (stating that "[c]ourts must examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless") (emphasis in original, internal quotations omitted).

[3] *Ante* at 64.

## Contract-Interpretation Principles

In construing a contract, this court's primary concern is to ascertain and give effect to the intentions of the parties as expressed in the contract.[4] We must examine and consider the entire contract in an effort to harmonize and give effect to all the contract's provisions so that none will be rendered meaningless.[5] Whether a contract is ambiguous presents a question of law for the court.[6] A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation.[7] But, when the wording of a written contract can be given a certain or definite legal meaning or interpretation, the law deems it unambiguous, and we must construe it as a matter of law.[8] We cannot rewrite the contract by ignoring terms or by adding to the contract's language under the guise of interpretation.[9] And, especially important for today's case, in construing the contract's terms, the court must not interpret distinct undertakings to mean the same thing.[10]

Contracting parties often take a belt-and-suspenders approach to managing risks of claims. For example, they may contract for a waiver of consequential damages, a limitation of liability, and a no-claims provision. All three provisions offer measures of protection in varying degrees, though the legal effects and application may differ depending on circumstances. That is why in determining a

---

[4] *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

[5] *See Moayedi*, 438 S.W.3d at 7.

[6] *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).

[7] *Id.*

[8] *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

[9] *See id.* at 162.

[10] *See Moayedi*, 438 S.W.3d at 7.

contract's meaning, courts must focus on the contract's wording to decide the nature and scope of the undertaking. [11]

## The Meaning of the No-Claims Provision

Section 26 contains two separate clauses, and each provides the parties a distinct form of mutual protection. The Limitation-of-Liability Provision limits liability in the event a certain kind of claim is made while the No-Claims Provision supplies a contractual shield against even the assertion of such a claim. Depending on the facts presented, one provision could afford more or less protection than the other. Because the provisions perform discrete functions and protect in different ways, the law does not view them as interchangeable.[12] Nor should this court.[13] Yet, the majority essentially finds that the two separate clauses in section 26 operate as a waiver and nothing more.

Waiving a right is not the same as releasing a right, though the two actions can serve as functional equivalents when the right is a claim. But neither a waiver nor a release is the functional equivalent of a promise not to assert a claim.[14] Waiver and release provide parties who contract for them with an affirmative defense to liability in the event a claim is made while an agreement not to make a claim is a contractual undertaking that carries with it the potential for an affirmative claim for relief by the non-breaching party in the event of breach.[15]

---

[11] *See Kelley-Coppedge, Inc.*, 980 S.W.2d at 464.

[12] *See National Property Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428–29 (Tex. 2015) (per curiam).

[13] *See id*.

[14] *See id*.

[15] *See id.*

Recognizing that section 26's first clause — the Limitation-of-Liability Provision — would provide greater value if parties were incentivized to honor it, James and Westlake Chemical structured their agreement so that the covenant in the second clause — the No-Claims Provision — would reinforce the first clause by prohibiting parties from even making claims that fell within the Limitation-of-Liability Provision. By adding this covenant, the parties gave teeth to the first clause.

Defending against claims (even ones that lack merit) can add costs and disrupt business. In crafting section 26, the parties sought to avoid the time, expense, and inconvenience of having to respond to claims for damages that fell within the Limitation-of-Liability Provision. The No-Claims Provision protects against these unwelcome possibilities. Without it, the parties would lack a mechanism to deter the making of claims even if the responding party ultimately would prevail in any ensuing litigation based on the Limitation-of-Liability Provision. To guard against significant costs that could accompany the making of claims falling within the Limitation-of-Liability Provision, the parties entered into a separate covenant – the No-Claims Provision. Because the No-Claims Provision requires ongoing performance, it affords the parties the important right to enforce a violation of this covenant through a breach-of-contract claim. By not giving meaning to this essential term, the court deprives sophisticated parties of an important contractual right.

The majority loses its way in treating the No-Claims Provision as part and parcel of the Limitation-of-Liability Provision.[16] Conflating the two provisions spoils the contractual analysis. This court should recognize the discrete purpose and function of the No-Claims Provision. Binding precedent demands it.

---

[16] *Ante* at 59–66.

*In National Property Holdings, L.P. v. Westergren*,[17] the Supreme Court of Texas in explaining the difference between a release and a covenant not to sue, underscored the importance of focusing on contractual language when determining the nature of the agreement.[18] Westlake Chemical argues that the No-Claims Provision functions as a defense to a claim of consequential damages but cannot serve as a basis for a breach-of-contract claim. James, relying on *Westergren's* holding, likens the No-Claims Provision to a covenant not to sue.[19]

The majority concludes that section 26 does not contain a categorical covenant not to sue.[20] A promise not to assert claims for certain types of damages is not the same as a covenant not to sue, which is a promise not to sue for any damages. Despite this difference, the relationship between a limitation of liability as to consequential damages and a covenant not to assert claims seeking consequential damages mirrors the relationship between a release of claims and a covenant not to sue on those claims.[21] The No-Claims Provision is a categorical agreement not to assert claims for consequential damages. Indeed, a more clear-cut statement could hardly be imagined. Yet, defying the words of section 26, the majority reasons that

---

[17] 453 S.W.3d 419, 428–29 (Tex. 2015) (per curiam)

[18] *See id.*

[19] James cites *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 765 n.1 (Tex. 1964) (reciting the parties' agreement "not to sue, make claim, or institute any action or proceeding directly or indirectly against" the other "to recover damages of any kind or character"); *Felix v. Prosperity Bank*, No. 01-14-00997-CV, 2015 WL 9242048, at *1 (Tex. App.—Houston [1st Dist.] Dec. 17, 2015, no pet.) (mem. op.) (bank agreement with depositor provided that, if depositor failed to meet certain conditions, depositor "cannot assert a claim against us on any items in that statement, and the loss will be entirely yours"); *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 400–01 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (agreement "not to sue, claim or make claims or institute any action or proceeding directly or indirectly against" other "to recover damages of any kind or character").

[20] *Ante* at 63–66.

[21] *Westergren*, 453 S.W.3d at 428–29.

the "no claim shall be made" language shows "the parties' intent to relinquish any claim they may ever have for consequential damages arising under the construction contract" rather than an agreement that no claim shall be made.[22]  The No-Claims Provision means what it says.

Though the majority cites four cases in support of its analysis, in none of these cases does the court address whether language in a contract constitutes a covenant not to assert a claim.[23]  The two Texas cases do not involve contracts with a promise not to assert a claim.[24]  Though the two out-of-state cases did involve contractual language that included a covenant not to make a claim, no party in either case asserted a breach of that covenant, so neither court addressed whether the language included a covenant not to make a claim.[25]

Rather than give the words in the second clause their plain meaning, the majority looks past them, fixing its focus on section 26's first clause.  Even though the parties used no waiver language in either of section 26's two clauses, the majority states that "The parties used language one would reasonably expect to be used in drafting a waiver of damages clause."[26]  The parties used limitation-of-liability language in the first clause and "no claims shall be made" language in the second.

---

[22] *Ante* at 64. The provision limits liability on other types of damages as well, but only consequential damages are at issue in today's case.

[23] *Ante* at 64.

[24] *See Le Norman Operating LLC v. Chalker Energy Partners III, LLC*, 547 S.W.3d 27, 32 (Tex. App.—Houston [1st Dist.] 2017, pet. granted) (contract providing "neither party shall be liable to the other party" for consequential damages was waiver); *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 385 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same).

[25] *See Perez-Gurri Corp. v. McLeod*, 238 So.3d 347, 350–52 (Fla. Ct. App. 2017); *Barhorst v. Thatcher*, 144 N.E.2d 272, 274–77 (Ohio Ct. App. 1956).

[26] *Ante* at 64.

Just as *Westergren* teaches that a release and a covenant not to sue are different legal animals with different legal consequences, this court should recognize that an agreement to limit liability for consequential damages differs from an agreement not to make a claim for consequential damages.[27]  The former provides an affirmative defense in the event a claim is made while the latter is an enforceable promise not to assert a claim.[28]  If a party breaks that promise by making a claim, as Westlake Chemical did in this case, the law affords the other party (James) a means to seek the benefit of its bargain — through a breach-of-contract claim for damages suffered as a result of the breach of the No-Claims Provision.[29]

The majority makes the puzzling assessment that "no claim shall be made" does not plainly express an intent that no claim shall be made.[30] Instead of construing these words to mean what they say, the majority says they mean the same thing as the first clause in section 26.  The words in the No-Claims Provision are not extraneous or unimportant. Texas law requires that the court give these words effect and not render them meaningless.[31]  Yet, in the majority's analysis, the words in the No-Claims Provision do no work at all.

Calling the No-Claims Provision a "small clause," the majority neither gives it effect nor cites authority that would support the notion that a court may ignore or diminish a contractual promise because the parties chose to express their undertaking concisely. In Texas jurisprudence and practice, "small clauses" can carry big

---

[27] *Westergren*, 453 S.W.3d at 428–29.

[28] *See id*.

[29] *See id.*

[30] *Ante* at 65.

[31] *See Moayedi*, 438 S.W.3d at 7(stating that "[c]ourts must examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless") (emphasis in original, internal quotations omitted).

obligations.  It is the meaning, not the quantity, of words that matters. If anything, the No-Claims Provision draws force from its concentrated expression.  Legal-writing experts remind us that verbosity obscures substance.[32]  The drafter's goal is not to be wordy but to be understood, and concise clauses enhance understanding. Consider the force and clarity of concisely worded covenants such as "Rent shall be paid." or "Goods shall be delivered." Like these "small clauses," the No-Claims Provision expresses clear meaning. Instead of denouncing it as a "small clause" that adds nothing to the first clause, this court should honor the substance of the parties' contractual choices.

Today's holding crushes the contracting parties' legitimate expectations, invites parties to sue on claims they promised not to bring, and robs James of the benefit of its bargain. Today's decision adversely impacts the public, too, because allowing parties to bring claims they promised not to assert wastes judicial resources and adds unnecessary delay and other costs to our justice system.

## Conclusion

The No-Claims Provision differs in content and purpose from the Limitation-of-Liability Provision. The parties bargained for this added protection. They used a separate clause to express it and they did so in clear terms.  The words in the No-

---

[32] *See, e.g.,* Stephen V. Armstrong & Timothy P. Terrell, *Thinking Like a Writer, A Lawyer's Guide to Effective Writing and Editing* 251 (3d ed. 2003) ("Verbosity wastes the reader's time, but it also does another kind of damage: It obscures your substance with a surface fuzz of verbal clutter. . . The fewer the words, the greater the impact."); Bryan A. Garner, *The Elements of Legal Style* 55 (Oxford University Press 1991) ("Ideally, legal writing is taut."); Adam L. Rosman, *Happy Warriors Against Herein: Ten Rules for Creating Better Legal Documents*, 17 The Scribes Journal of Legal Writing 46, 48 (2017) (noting that "being concise" is one of the "keys to graceful, effective prose."); Gerald Lebovits, *Legal-Writing Myths*, 16 The Scribes Journal of Legal Writing 113, 117 (2015) (noting the need for short and concise legal writing); Mark Cooney, *Style is Substance: Collected Cases Showing Whit It Matters*, 14 The Scribes Journal of Legal Writing 1, 8 (explaining how verbosity hurts the writer's cause) (2011).

Claims Provision create a distinct and independent contractual duty to make no claims for consequential damages. The majority could and should give the No-Claims Provision meaning, yet it fails to do so.[33] By refusing to recognize the covenant in the No-Claims Provision, the majority undermines the supreme court's *Westergren* precedent. Rather than overrule Westlake Chemical's first cross-issue based on the majority's interpretation of the No-Claims Provision, the court should hold that under section 26's unambiguous language, Westlake Chemical promised not to assert any consequential-damages claims against James.


/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justices Jewell and Bourliot (Jewell, J., majority).

---

[33] *See Moayedi*, 438 S.W.3d at 7.