**Affirmed in part; Reversed in part and Opinion Filed July 18, 2022**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00570-CV

### STELLAR RESTORATION SERVICES, LLC, Appellant
### V.
### CHARLES F. MCLALLEN A/K/A CHARLES MCLALLEN III AND GYMNASTICS ELITE TRAINING CENTER, LLC, Appellees

**On Appeal from the County Court at Law No. 5**
**Collin County, Texas**
**Trial Court Cause No. 005-03554-2019**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Pedersen, III

Appellant Stellar Restoration Services, LLC (Stellar) appeals, challenging the trial court's Order Granting Defendants' Special Appearances and Motions to Dismiss (the Order). In three issues, Stellar argues that (1) appellees' assent to the forum-selection clause in the parties' contract established personal jurisdiction; (2) the Louisiana statute that appellees rely upon does not render the forum-selection clause unenforceable; and (3) even if we conclude a choice-of-law analysis is called for in this case, the Louisiana statute does not invalidate the forum-selection clause. We reverse the portion of the Order granting the special appearance and motion to

dismiss of appellee Gymnastics Elite Training Center, LLC (the Center). We affirm the Order as to appellee Charles F. McLallen.

### BACKGROUND

In May 2019, a hail storm damaged the roof on the Center, which is located in Sulphur, Louisiana. A representative of Stellar, a Texas entity, called on the Center and met with McLallen, the Center's owner, proposing that Stellar be hired to repair the Center. According to McLallen, the representative had him sign a one-page document that would waive any liability for the representative to go up on the Center's roof and assess the damage. The document identified the Center as the "client," and McLallen signed it as the client's "owner." According to Stellar, McLallen was given the three-page document titled Restoration Services Agreement (the Agreement); he signed the third page. The Agreement gave Stellar the exclusive right to repair the Center.

After McLallen signed the Agreement, Stellar began its performance: sourcing satellite images of the Center for its repair, meeting with the Center's insurance carrier, and making estimates for the cost of repairs. But Stellar learned that appellees had hired a different entity to perform the repairs when a Stellar representative drove past the Center and saw another crew working on the roof.

Stellar sued appellees in Collin County for breach of the Agreement. Each defendant filed a special appearance and motion to dismiss, supported by a McLallen affidavit, which testified to a lack of minimum contacts with the State of Texas.

McLallen also contended that he had not signed the Agreement in his personal capacity and had not consented to jurisdiction in Texas. The Center argued that it had not consented to jurisdiction and that a single contract was insufficient to support personal jurisdiction over a non-resident entity. Before the trial court heard and ruled on these filings, each defendant filed a supplemental special appearance, contending that a Louisiana statute rendered the forum-selection clause null and void and unenforceable. Stellar filed a response to the special appearances, supported by the affidavit of its president, Michael de la Mora. The response relied upon the contractually agreed-upon forum-selection clause as the basis for personal jurisdiction over the defendants.

After hearing arguments of counsel, the trial court granted the special appearances and dismissed Stellar's claims against both defendants. This appeal followed.

## PERSONAL JURISDICTION

When a nonresident defendant challenges jurisdiction through a special appearance, it bears the burden of negating all bases of personal jurisdiction alleged by the plaintiff. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). In this case, Stellar's petition acknowledged that appellees were residents of Louisiana, but it alleged that they signed the Agreement, which "sets forth a forum selection clause that designates disputes to be handled in the State of Texas; and further sets forth, and the parties contractually agreed, that venue for any disputes

shall be in Collin County, Texas." Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018).

## The Agreement

Stellar's first issue contends that, as parties to the Agreement, appellees consented to jurisdiction in Texas.

### *Failure to Read the Agreement*

Appellees first make a factual argument, asserting that Stellar did not present the Agreement to them as a contract to repair the roof. In his affidavit, McLallen testified that after the hail storm damaged the Center's roof, he was approached by a representative of Stellar. He testified further:

> 7. This individual presented me with a form for my signature as the owner of Gymnastics Elite Training Center, LLC. I was told the form was a document I was required to sign for liability purposes to allow Stellar Restoration Services, LLC to get on the roof of the building in Louisiana, assess the damages from the hail storm, and give Gymnastics Elite Training Center, LLC a quote for repairing the hail damage.
>
> 8. The form this individual had me sign was a single page.
>
> 9. At no point was I told, nor at any point did I understand, that the form the individual from Stellar Restoration Services, LLC asked me to sign was a binding contract for the repair of the roof on the building in Louisiana.

When, as in this case, the trial court does not issue findings of fact and conclusions of law after ruling on a special appearance, we imply all relevant facts necessary to

–4–

support the judgment that are supported by evidence. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).

Here, the Agreement is included in our record, and it is undisputed that McLallen signed the third page of the Agreement in the form in which it is in our record. McLallen does not argue that Stellar switched documents or forged his signature. However, the signatures on the Agreement are on a page clearly marked as "Page 3 of 3." That page says nothing about waiving liability or about a roof inspection. Instead, the signature page contains provisions under the headings Assignment, Governing Law/Jury Waiver, Severability, and Entire Agreement. The section titled Governing Law/Jury Waiver sets forth the forum-selection clause on which Stellar relies. Thus, accepting McLallen's testimony as true, the only reasonable inference a factfinder could draw is that McLallen did not read the document that he signed.

Texas law is well settled that parties to an agreement are obligated "to protect themselves by reading what they sign." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). It cannot be the courts' role to protect parties from their own agreements. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015). We do not, therefore, excuse a party's failure to read an agreement when the party has the opportunity to do so. *See id.* Instead, "the law presumes that the party knows and accepts the contract terms." *Id.* McLallen's affidavit contains no representation that he was not given the opportunity to read the page he signed. An

extended period of time would not have been necessary: even a cursory review would have established that the page was not what McLallen understood it to be.

We conclude that the parties to the Agreement are not excused from its performance by a failure to read its terms.

*Identifying Parties to the Agreement*

As a threshold matter, we must determine which parties are actually bound by the Agreement. Stellar has sued to enforce the Agreement and must, therefore, be bound by it. Stellar pleaded that McLallen signed the Agreement in both his representative and individual capacities, binding both appellees to its terms.

Appellees argue that McLallen signed the Agreement only in his representative capacity. We agree. The signature block is not ambiguous: it identifies the "customer" as Gymnastics Elite Training Center, and it is signed by Charles McLallen as "owner" of the customer. We conclude that Center is a party to, and is bound by, the Agreement; McLallen is not.

Because McLallen is not personally bound by the Agreement, he is not personally subject to its forum-selection clause. Stellar alleges personal jurisdiction over these appellees based solely on the Agreement's forum-selection clause. Accordingly, we conclude the trial court did not err in granting McLallen's special appearance and dismissing Stellar's claim against him for lack of jurisdiction.

## The Forum-Selection Clause

Stellar argues that, because the Center is a party to the Agreement, it is bound by the Agreement's forum-selection clause. That clause states:

> It is understood and agreed that this Agreement shall be governed by, construed, enforced in accordance with, and subject to, the laws of the State of Texas. Exclusive FORUM and VENUE for any action brought pursuant to the terms of this Agreement, or in any way related to this Agreement, shall be in COLLIN County, Texas.

Stellar argues that the Center has consented to jurisdiction pursuant to this clause.

A forum-selection clause is generally enforceable in Texas; the burden of proof on a party challenging the validity of such a clause is a heavy one. *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 232 (Tex. 2008). Indeed, a trial court abuses its discretion if it refuses to enforce a forum-selection clause unless the party opposing enforcement clearly shows that (1) the clause is invalid for reasons of fraud or overreaching, (2) enforcement would be unreasonable or unjust, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009) (citing *Lyon Fin. Servs.*, 257 S.W.3d at 231–32); *see also RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.— Dallas 2010, no pet.). Stellar contends that the Center has failed to establish any of these reasons why it should not be held to the Agreement's forum-selection clause.

*Challenges to the Validity of the Clause*

The Center contends that the clause was not "valid and freely negotiated" and, therefore, should not bind it. It first claims that there is evidence of "chicanery" in this case and states that it has asserted the clause is invalid because of fraud or overreaching. We disagree. Neither party's special appearance nor its supplemental special appearance asserts that the Agreement—or, most importantly, the forum-selection clause—was procured by fraud. "[F]raudulent inducement to sign an agreement containing a dispute resolution agreement such as an arbitration clause or forum-selection clause will not bar enforcement of the clause unless the specific clause was the product of fraud or coercion." *Lyon Fin. Servs.*, 257 S.W.3d at 232.

But even if the Center had raised a defense of fraud below, it would not be available given the facts of this case. The Center cites solely to the portions of the McLallen affidavit quoted above as support for the defense, i.e., that McLallen was not told and did not understand that he was signing a binding contract to repair the roof; he was told it was a waiver of liability for a roof inspection. The Texas Supreme Court has concluded that when a party chooses not to read an agreement before signing it, and instead relies upon misrepresentations regarding the agreement's contents, then "as a matter of law, that reliance [is] not justifiable." *Westergren*, 453 S.W.3d at 424 (party who signed a release without reading it, after being told it was a receipt, was not justified in relying on misrepresentation). A party to a written agreement may not justifiably rely on an oral misrepresentation regarding that

agreement's unambiguous terms. *Id.* And absent justifiable reliance, there can be no fraud. *See id.* at 423.

The Center also contends it asserted below that the Agreement was illusory or was not freely negotiated. Again, we disagree. The Center never argued in the trial court that the Agreement was not supported by mutual promises, i.e., to repair the roof and to pay for those repairs. *See In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("A promise is illusory if it does not bind the promisor, such as when the promisor retains the option to discontinue performance. . . . When illusory promises are all that support a purported bilateral contract, there is no mutuality of obligation, and therefore, no contract."). Moreover, the record contains no suggestion that McLallen was not free to negotiate to change any part of the Agreement—including the forum-selection clause—had he attempted to do so. The Center points to Stellar's statement below that it uses this form of agreement, or one substantially similar, for all of its customers. But it identifies no authority for the proposition that because a contract is a pre-printed form, it is illusory or cannot be negotiated and changed. Nor have we found such authority.

For the foregoing reasons, we conclude that the Center was a party to the Agreement and that it raised no valid objection to the binding nature of the Agreement or its forum-selection clause. Accordingly, in the absence of a bar to enforcement of the forum-selection clause, we conclude that the Center has

consented to personal jurisdiction in this matter. We sustain Stellar's first issue as to the Center.

*The Louisiana Statute*

The Center argued in its supplemental special appearances that a Louisiana statute provides just such a bar to enforcement of the forum-selection clause, contending the clause "is null and void and unenforceable pursuant to the published public policy of Louisiana." The Center relies on this Louisiana statute:

> A. The legislature finds that, with respect to construction contracts . . . for public and private works projects, when one of the parties is domiciled in Louisiana, and the work to be done and the equipment and materials to be supplied involve construction projects in this state, provisions in such agreements requiring disputes arising thereunder to be resolved in a forum outside of this state or requiring their interpretation to be governed by the laws of another jurisdiction are inequitable and against the public policy of this state.
>
> B. The legislature hereby declares null and void and unenforceable as against public policy any provision in a contract . . . as described in Subsection A, which either:
>
>> (1) Requires a suit or arbitration proceeding to be brought in a forum or jurisdiction outside of this state; rather, such actions or proceedings may be pursued in accordance with the Louisiana Code of Civil Procedure or other laws of this state governing similar actions.
>>
>> (2) Requires interpretation of the agreement according to the laws of another jurisdiction.

LA. R.S. 9:2779.

The Center argued below that this statute—on its face—prohibits enforcement of the forum-selection clause. In Stellar's second appellate issue, it contends that the

statute does not present a personal jurisdiction issue for a Texas court. We agree with Stellar, and we respectfully decline to give this statute the dispositive effect that the Center seeks. We are bound by the pronouncements of the Texas Supreme Court. *Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338*, 273 S.W.3d 659, 666 (Tex. 2008) ("It is fundamental to the very structure of our appellate system that this Court's decisions be binding on the lower courts."). That court has adopted the factors that we must evaluate if a defendant wishes to disallow a forum-selection clause. Among those factors, public policy has a role to play, but our inquiry is whether enforcement would contravene a strong public policy of the forum where the suit was brought. *Int'l Profit Assocs.*, 274 S.W.3d at 675; *RSR Corp.*, 309 S.W.3d at 704. Thus, it is the public policy of Texas—not Louisiana— that we must take into account when evaluating a forum-selection clause. In this case, we conclude that Texas's strong public policy in favor of freedom of contract weighs in favor of enforcing the forum-selection clause. *See Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 6 (Tex. 2014) ("Texans have long embraced the principle of freedom of contract. And this Court's decisions respect the strong public policy of respecting parties' freedom to design agreements according to their wishes.") (footnotes omitted). Louisiana's public policy is not a factor our supreme court has directed us to consider in this analysis.[1]

---

[1] Appellees repeatedly cite *DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 677 (Tex. 1990), for the proposition that "parties to a contract cannot by agreement thwart or offend the public policy of the state

Finally, appellant's third issue asserts that even under a conflicts of law analysis, the Louisiana statute is not a factor. We agree. Under Texas's choice-of-law rules governing contracts, we look to section 187 of the Restatement (Second) of Conflict of Laws for contracts that contain an express choice-of-law provision. *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). That section states that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless *either*:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, *or*

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws, § 187(2) (AM. LAW INST. 1988) (emphasis added). We need not address which state has a materially greater interest or which state would be the state of applicable law if the parties had not agreed to a governing law. Subsection (a) directs us to apply Texas law unless Texas has no substantial relationship to the parties or the transaction and the parties had no reasonable basis for their choice. Here, Stellar is a resident of Texas and payments

---

the law of which ought otherwise apply." Regardless of which state's law the Center contends "ought otherwise [to] apply," we conclude *DeSantis* is not helpful to our analysis in this case. *DeSantis* involved a covenant not to compete, not a forum-selection clause or personal jurisdiction. It also predates *International Profit Associates* and *Lyon Financial Services*, which set forth the factors we are to consider in this case.

–12–

under the Agreement were to be made to its Texas office. The Restatement's commentary confirms that subsection (a) is satisfied in our case:

> When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where performance by one of the parties is to take place or where one of the parties is domiciled or has his principal place of business.

*Id.* cmt. f.

"The objectives behind choice-of-law rules generally and the Restatement rules in particular 'may best be attained in multistate transactions by letting the parties choose the law to govern the validity of the contract and the rights created thereby.'" *Sonat Expl. Co.*, 271 S.W.3d at 232 (quoting Restatement (Second) of Conflict of Laws § 187 cmt. e) (AM. LAW INST. 1971). Here, the parties made that choice by signing the Agreement.

We conclude that the Louisiana statute does not defeat the parties' forum-selection clause in this case. We sustain appellant's second and third issues.

### CONCLUSION

We reverse the trial court's Order granting the Center's special appearance and dismissing Stellar's claims against it. We affirm the Order as to McLallen.

/Bill Pedersen, III//
200570f.p05                                BILL PEDERSEN, III
                                                           JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

STELLAR RESTORATION
SERVICES, LLC, Appellant

No. 05-20-00570-CV     V.

CHARLES F. MCLALLEN A/K/A
CHARLES MCLALLEN III AND
GYMNASTICS ELITE TRAINING
CENTER, LLC, Appellees

On Appeal from the County Court at
Law No. 5, Collin County, Texas
Trial Court Cause No. 005-03554-
2019.
Opinion delivered by Justice
Pedersen, III. Justices Goldstein and
Smith participating.

In accordance with this Court's opinion of this date, the order of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order granting the special appearance of Gymnastics Elite Training Center, LLC, and dismissing claims against it. In all other respects, the trial court's order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 18th day of July, 2022.