

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00386-CV

———————————————

HIGH RISK PREGNANCY DOCTORS, PLLC AND VIOLETTA LOZOVYY,
Appellants

V.

LINCOLN PROPERTY COMPANY D/B/A LINCOLN HARRIS CSG AND
DOUGLAS MACLAY III, Appellees

---

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-364813-25

---

Before Kerr, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

Appellants High Risk Pregnancy Doctors, PLLC (HRPD) and Violetta Lozovyy (Dr. Lozovyy) appeal from a final judgment dismissing their claims after their landlord's leasing agent, Lincoln Property Company d/b/a Lincoln Harris CSG,[1] and Lincoln Harris CSG's representative Douglas Maclay III (jointly, the Property Appellees) filed a Rule 91a dismissal motion. In two issues, Appellants argue that the trial court erred by dismissing (1) their fraud claims because their reliance on Maclay's representation was justifiable and (2) their claim under the Deceptive Trade Practices Act (DTPA) because the discovery rule tolled the statute of limitations. We conclude Appellants' petition demonstrates (1) that Appellants' reliance on Maclay's oral representation (which was directly contradicted by the express, unambiguous terms of the lease) was not justified as a matter of law and (2) that the accrual of Appellants' DTPA claim was not tolled because they failed to exercise reasonable diligence to discover the alleged falsity of Maclay's statement by reviewing the written lease. Accordingly, we affirm.

---

[1]The Property Appellees' Rule 91a motion states that this is a misnomer and that the correct entity is Lincoln Property Company Commercial Service Enterprises, LLC.

## II.  Background

### A.    Allegations Pleaded in Petition[2]

Dr. Lozovyy is the sole member of HRPD.  She is a physician licensed in the State of Texas and is a specialist in the field of Maternal Fetal Medicine, a sub-specialty of obstetrics and gynecology.  Dr. Lozovyy sought to lease office space from HRT Properties of Texas, LTD through Lincoln Harris CSG and primarily dealt with Maclay, a representative of Lincoln Harris CSG, which she understood to be HRT Properties' broker or leasing agent.

On or about April 20, 2022, Lincoln Harris CSG submitted a Lease Space Offer Letter (the Offer Letter) to HRPD, as the proposed Tenant, for space in a medical office that is on a campus owned by Baylor Medical Center at Grapevine, a Texas nonprofit corporation (BMC-Grapevine) and part of Baylor Health Care System (the Hospital System).

In addition to other terms, the Offer Letter stated that "Tenant shall have 120 days from lease commencement to obtain staff privileges at Baylor Scott & White at Grapevine."  The Offer Letter purported to attach an "Exhibit A" containing certain restrictions mandated by BMC-Grapevine, pursuant to a Ground Lease (the Ground Lease).  The Exhibit A contained, in pertinent part, the following provisions:

---

[2]The Property Appellees state in their brief that while they dispute many of the factual allegations in Appellants' petition (especially whether Maclay made the claimed statements), they accept the allegations pleaded in the petition as true for purposes of their motion to dismiss and for purposes of this appeal.  We therefore set forth the allegations from the petition.

**3. COMPLIANCE WITH PRECLUDED SERVICES RESTRICTIONS/COMMERCIAL TENANT USE RESTRICTIONS.** *Tenant covenants and agrees, provided this Lease remains in effect, to continuously use and occupy the Premises and to restrict the activities conducted in the Premises to the practice of medicine reasonably related to a service line of an acute care hospital on the Baylor Regional Medical Center at Grapevine Campus which is owned or operated by Baylor Health Care System,* or its successors or any affiliate thereof (any such acute care hospital on the Baylor Regional Medical Center at Grapevine Campus which is owned or operated by Baylor Health Care System, or its successors or any affiliate thereof is hereinafter referred to as "the Hospital" or "a Hospital"); *provided, however, that neither Tenant nor any other person or entity shall provide any Precluded Services (as defined hereinafter) in the Premises except as expressly allowed in this Exhibit. . . .*

**4. COMPLIANCE WITH HOSPITAL AND REGULATORY REQUIREMENTS.** Tenant shall ensure that all services provided by Tenant or any other persons or entities in the Premises are conducted in compliance with all applicable laws and regulations. *All persons or entities providing physician services in the Premises must provide medical services reasonably related to a service line of a Hospital and be either (a) a physician that holds medical active or courtesy staff privileges at a Hospital* who: (1) has an unrestricted and unlimited license to practice medicine in the State of Texas, (2) is not, and has not been within the previous ten (10) years, an Excluded Person (as defined below), and (3) has not been convicted of any felony; or (b) a physician group practice that is a partnership, professional corporation, professional limited liability company, or other entity whose employed or contracted physicians providing services at the Building each satisfy the requirements of an individual physician pursuant to subsection (a) above. . . . [Emphases added in italics.]

Dr. Lozovyy and HRPD's petition specifically admits, "The foregoing provisions indicate that Dr. Lozovyy and HRPD would not be qualified to provide medical services from the Premises if Dr. Lozovyy had not obtained medical active or courtesy staff privileges at 'Hospital.'" The petition also admits that at the time the Offer Letter was presented to HRPD, Dr. Lozovyy had not obtained either medical

4

active or courtesy staff privileges at any Hospital owned or operated by the Hospital System but planned to apply for such privileges.

On or about April 21, 2022, Lincoln Harris CSG's senior transaction manager confirmed in an email that the signed proposal for HRPD had added language that gave Appellants 120 days to obtain privileges on the campus as a contingency. The email acknowledged that Dr. Lozovyy was in the process of getting credentialed and HRPD's goal was to move into the building as soon as possible so that HRPD could retain the patients from the previous tenants, Perinatal Associates.

In May 2022, Lincoln Harris CSG presented the Lease to Dr. Lozovyy for signing. The Lease contained an Exhibit "E," entitled "Sublease Restrictions," which carried forward identically worded restrictions as in the Offer Letter regarding Compliance with Hospital Regulatory Requirements (including requiring any physician who provides services on the Premises to hold active medical or courtesy staff privileges at a Hospital).[3] Because Dr. Lozovyy had not applied for privileges, she asked Maclay what would happen if she was unable to obtain the required privileges within 120 days. Maclay promised that if Dr. Lozovyy failed to obtain the required privileges, *the Lease would not become effective* and that the situation would be dealt with if it ever arose. Maclay explained that requirement was necessary for BMC Grapevine

---

[3]Appellants attached no exhibits, such as the Lease, to their petition. *Cf.* Tex. R. Civ. P. 59.

to approve the Lease. Maclay urged Dr. Lozovyy to sign the Lease and make the initial deposit.

Dr. Lozovyy relied upon Maclay's representation and signed the Lease on behalf of HRPD and also executed a personal guaranty of the Lease. Dr. Lozovyy paid a security deposit of $4,183.83, and rent for June through October 2022 in the total amount of $21,756.48; invested $121,727.00 in furniture, furnishings and equipment in preparation for opening her office; and paid office expenses and salaries of $423,418.00 in connection with the operation of the medical practice on the Premises. HRPD did not and could not have earnings at that location because Dr. Lozovyy did not have privileges; Dr. Lozovyy's application for medical active or courtesy staff privileges was denied.

When Dr. Lozovyy expressed her concerns to Maclay about the status of the Lease, Maclay made it clear that Appellants were expected to fully perform the Lease notwithstanding her inability to obtain privileges and the requirements of the Ground Lease. Maclay also threatened to sue Appellants if they did not continue to pay rent.

## B. Procedural History

On or about December 8, 2022—two days after the medical executive notified Dr. Lozovyy of the deemed withdrawal of her application—HRT Properties (not the Property Appellees) sued HRPD and Dr. Lozovyy, as Guarantor, for breach of the Lease and the Guaranty.

In their answer, Appellants asserted that the Lease had never become effective because of Dr. Lozovyy's inability to obtain the required medical-staff privileges. HRT Properties subsequently nonsuited its lawsuit against Appellants.

On October 11, 2024, Appellants sued the Property Appellees[4] alleging causes of action for fraudulent inducement, common law fraud, and DTPA violations. Under Appellants' fraudulent-inducement cause of action, they pleaded the following allegations:

> In May 2022, Plaintiffs and Defendants[5] entered into a valid and enforceable contract for the lease of the Premises subject to a contingency agreement that Plaintiff shall not be bound by the terms of the lease contract if it fails to obtain privileges at the Hospital within 120 days of signing the contract. Defendants misrepresented that Plaintiff shall not be bound by the terms of the lease contract if it fail[ed] to obtain privileges at the Hospital. Defendants made the representation with the knowledge that it was false. Defendants made the misrepresentation with the intention that the Plaintiff should rely on or act upon the misrepresentation. Plaintiffs relied on Defendants' misrepresentation, signed the lease agreement and paid rent. Plaintiff also made payments for furnishings, equipment[,] and salaries. Plaintiffs suffered damages as a result of Defendants' misrepresentations and [of] being forced to defend a breach[-]of[-]contract lawsuit to recover unpaid rent. [Paragraph numbering removed.]

Under their common-law-fraud cause of action, Appellants pleaded the following allegations:

---

[4]Appellants also sued HRT Properties, but their causes of action against it were severed into a new cause number. It is not a party to this appeal.

[5]Because there are multiple Plaintiffs and Defendants and because the petition does not specifically name which one is meant when such terms are used singularly, we leave those terms as is.

7

*In May 2022, Plaintiffs and Defendants entered into a valid and enforceable contract for the lease of the Premises subject to a contingency agreement that Plaintiff shall not be bound by the terms of the lease contract if it fails to obtain privileges at the Hospital within 120 days of signing the contract.* Defendants made a promise that Plaintiffs would not be bound by the terms of the lease contract if Plaintiff w[ere] unable to obtain Hospital privileges. Defendants did not intend to keep that promise. Plaintiffs relied on Defendants' promise when Plaintiffs entered into the contract. Defendants failed to keep their promise by demanding payment in full under the contract and filing a lawsuit against Plaintiffs to enforce the contract. Defendant's false representation directly and proximately caused injury to the Plaintiffs. [Emphasis added and paragraph numbering removed.]

Under their DTPA cause of action, Appellants pleaded the following allegations:

In May 2022, Plaintiffs and Defendants entered into a valid and enforceable contract for the lease of the Premises subject to a contingency agreement that Plaintiff shall not be bound by the terms of the lease contract if it fail[ed] to obtain privileges at the Hospital within 120 days of signing the contract. Plaintiffs complied with all the contractual obligations. Plaintiffs are "consumers" under [Texas Business and Commerce Code Section] 17.45(4) as [a] corporation who sought or acquired goods. Defendant violated [Texas Business and Commerce Code Section] 17.46(b) in one or more of the following respects:

> i) "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which the person does not;
>
> ii) Representing that an agreement confers or involves, rights, remedies, or obligations which it does not have or involve . . . ;
>
> iii) Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to

induce the consumer into a transaction into which the consumer would [not] have entered had the information been disclosed."

HRPD and Dr. Lozovyy relied upon Defendants' representations to their detriment. Defendant's misrepresentations as set forth above (including demanding compliance with the Lease and filing suit) also constitute an unconscionable action or course of action as defined in the DTPA. [Paragraph numbering removed.]

Appellants sought to be awarded judgment against Defendants, jointly and severally, for a sum within the trial court's jurisdictional limits; prejudgment and postjudgment interest as provided by law; attorney's fees and costs; exemplary damages against each Defendant; and additional damages in accordance with Texas Business and Commerce Code Section 17.50(b)(1).

## C. Rule 91a Dismissal Motion Filed and Granted

The Property Appellees filed a joint Rule 91a motion to dismiss all causes of action asserted against them by Appellants. The Property Appellees argued that Appellants' causes of action for fraud and fraudulent inducement have "no basis in law because the allegedly fraudulent representation is contradicted by the express terms of a written agreement" (i.e., lack of justifiable reliance) and that the DTPA cause of action has "no basis in law because it is barred by the applicable two-year statute of limitations."

In response, Appellants argued that fact issues precluded the dismissal of their fraud claims and that their DTPA claim was timely under the discovery rule. The Property Appellees replied that Rule 91a's procedure required the trial court to

9

assume all facts true as pleaded and that Appellants' DTPA arguments failed because even applying the discovery rule, the deceptive act in question must be inherently undiscoverable and Appellants must have acted with reasonable diligence to discover the act.

The trial court held a hearing on the dismissal motion. At the hearing, the trial court stated its understanding that there were no lawyers involved on Appellants' behalf in looking over the Lease, and HRT Properties' attorney stated that to his knowledge, that was correct. The trial court noted that HRT Properties had brought a lawsuit to enforce the terms of the Lease but had then dismissed it without prejudice.

The Property Appellees' counsel argued that limitations began to run in May 2022 when Maclay made the deceptive statement and then cataloged the events that had occurred before and after that statement:

> So the allegation is that Dr. Lozovyy was presented with the lease in April of 2022 --
>
> THE COURT: Right.
>
> [THE PROPERTY APPELLEES' COUNSEL]: -- the lease had an explicit requirement that in order to comply with the lease to lawfully occupy the leased space, she had to get privileges from Baylor Grapevine.
>
> THE COURT: Right.
>
> [THE PROPERTY APPELLEES' COUNSEL]: She then goes and asks Maclay, according to her, and obviously we dispute this, but for the purposes of the 91(a), we accept it as true. According to her, she

then goes and asks Maclay in May of 2022, hey, what happens if I don't get privileges.

And despite the fact that the lease and the lease space [O]ffer [L]etter, both of which are quoted in the petition, say you must have treating privileges in order to comply with this lease, and despite the fact that in Paragraph 14 of the petition, Dr. Lozovyy says, that's what I understood it to mean, she claims that based on the representation by Maclay in May of 2022, she then signs the lease, enters the space, and, according to her, spends over half a million dollars on salaries, furniture, renovations, and rent.

THE COURT:  Yeah.

[THE PROPERTY APPELLEES' COUNSEL]:  So, Your Honor, our position is that the deceptive act alleged by the plaintiff was in May of 2022.  The plaintiffs' position is that the discovery rule should apply[] because the deception was inherently undiscoverable until they got sued by [HRT Properties] in December of 2022.

So what the plaintiffs' take in the position of in the brief, in the response brief is there was no possible way we could have known that what Doug Maclay said was not true until we got sued by [HRT Properties] in December of 2022[] because we weren't paying rent because we couldn't occupy the space because we didn't have privileges.

And so the issue here, Your Honor, for the DTPA cause of action is the application of the discovery rule.  Does the discovery rule toll limitations from May of 2022 when Maclay said what they claim he said, which we dispute, but that's what [they] claim.  Does [the] discovery rule toll that from May 2022 to December 2022 when they get sued?  And the obvious answer to that question, Your Honor, is no.

There was a lease document presented to Dr. Lozovyy that said you've got to get privileges.  She then claims Maclay told her if you don't get privileges, you just get to walk away.

Your Honor, the discovery rule only applies if the deception is inherently undiscoverable.  It cannot be discovered even through exercise of reasonable diligence.  Your Honor pointed out a moment ago, Dr. Lozovyy didn't have a lawyer reviewing this lease.  She didn't

11

have a tenant rep. Doug Maclay was a rep for Healthcare Realty Services. His duties were to Healthcare Realty.

She took this lease on her own initiative. She asked Maclay, hey, what -- what does this -- this privileges term mean? Maclay allegedly tells her something that's contradicted by the terms of the lease and without taking any further action, she, quote unquote, relies on that and enters into the lease.

So in other words, Your Honor, she did not take any action whatsoever to determine whether what Maclay [had] said was true or false. She simply relied on it. And the -- and the discovery rule requires an act of reasonable diligence by the plaintiff in order to invoke the discovery rule. You have to have done something to determine whether you were deceived or not.

HRT Properties' attorney said that Dr. Lozovyy had a 120-day waiver of the privileges requirement but "never completed all of her credentialing." But in HRT Properties' view as landlord, Dr. Lozovyy's failure to obtain privileges did not forfeit the requirement to pay under the Lease.

As to the fraud claims, the Property Appellees' counsel argued about the direct contradiction that was present between the Lease and the alleged fraudulent statement:

[W]e've got two allegations in the petition that allow the [c]ourt to dispose of the fraud cause of action based on no justifiable reliance.

We've got the lease language that says you must have privileges, and we've got the representation by Maclay. This is Paragraphs 13 and 14 in the petition and 16. The representation by Maclay, alleged, which we dispute, but the alleged representation that he says if you don't get privileges, you're just excused from the lease. The lease goes away.

That's in contradiction to the plain black[-]letter language of the lease. It's not reasonable or justifiable for Dr. Lozovyy to claim that she

12

relied on Maclay's representation that was contrary to the terms of the lease. This is not justifiable reliance, Your Honor.

If I hand you a document that says A[,] and then orally I tell you B, you can't claim reliance damages because you relied on B. If the document says A, you've got to use reasonable diligence, and you've got [to] say, hey, this is what the document says. It's the same issue as the limitations issue.

. . . .

And what we have here, Your Honor, is Dr. Lozovyy, who is an experienced physician and her medical practice, [HRPD], which is an existing medical practice. These are sophisticated parties in the medical field. They've done these kinds of agreements before. . . . [S]he's gone through the privileges credentialing process before. She knows that when you sign a lease that says you've got to have privileges, if you don't get privileges, that doesn't mean you just get to walk away.

And the last -- the last point I will add here, Your Honor, is that she didn't have privileges at the time she entered this lease. That's in the petition.

And so even if we assume that what -- that Maclay actually said that to her, said that the lease would just terminate, she knew that she didn't have privileges at the time. And despite that, she's claiming that she went and spent half a million dollars improving the space.

Appellants' attorney argued that when Dr. Lozovyy saw that the Lease required her to have privileges, she asked what would happen if she were not granted treating privileges; she signed the Lease after relying on Maclay's response that she would not be obligated under the Lease if she failed to obtain treating privileges. Appellants' attorney claimed that there was "no other time between signing the [L]ease [in] May of 2022 and December for them to discover that the promise that they wouldn't be obligated under the [L]ease was deceptive . . . until Dr. Lozovyy could not get treating

privileges." He further argued that Dr. Lozovyy had no duty to use due diligence to discover that Maclay's representation was fraudulent; that the only reason Dr. Lozovyy had signed the Lease was to treat patients; and that if there were no treating privileges, it made sense for her to believe that the obligations would go away. As to whether Appellants had looked at the Lease, their attorney contended that Dr. Lozovyy had "diligently read the [L]ease" and had brought up the concerns that she had, but "she was deceived."

Appellants' attorney claimed that parol evidence was admissible to establish that a contract has been induced by fraud but also acknowledged that the court could not look beyond the petition for Rule 91a purposes. Based on the petition, Appellants' attorney contended that Appellants had established all the elements of a fraudulent inducement cause of action. According to Appellants' attorney, the Property Appellees' defensive arguments were premature.

As to the DTPA claim, Appellants' attorney argued that limitations had begun to run in December. Specifically, Appellants' attorney contended that it was not until Dr. Lozovyy did not get treating privileges (which occurred in December 2022) that she discovered that Maclay's statement—that she would not be obligated under the Lease—was false.

In rebuttal, the Property Appellees' counsel argued that the crux was not whether Dr. Lozovyy had asked Maclay about the Lease but what, if anything, she had done to determine whether what he had told her was true. The Property Appellees'

counsel reiterated that Dr. Lozovyy had a duty to inquire whether what Maclay had said was true because what he had said was contrary to the Lease.

The trial court granted the Rule 91a motion, dismissing with prejudice all claims asserted by Appellants against the Property Appellees. This appeal followed.

## III. Standard of Review

A party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. Tex. R. Civ. P. 91a.1. The standard of review for an order granting a Rule 91a motion to dismiss is as follows:

> Dismissal of a suit is appropriate under Rule 91a "if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought . . . [or if] no reasonable person could believe the facts pleaded." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (citing Tex. R. Civ. P. 91a). We review a Rule 91a motion's merits de novo because the availability of a remedy under the facts alleged is a question of law and because the rule's factual-plausibility standard is akin to a legal-sufficiency review. *Id.*

> If a claimant's factual allegations in his pleadings, taken as true, and the reasonable inferences to be drawn from those allegations do not entitle the claimant to the relief sought, then the claim has no basis in law. *Fiamma Statler, LP v. Challis*, No. 02-18-00374-CV, 2020 WL 6334470, at *8 (Tex. App.—Fort Worth Oct. 29, 2020, pet. denied) (mem. op.). Rule 91a limits a court's factual inquiry to the plaintiff's pleadings, but it does not so limit the court's legal inquiry. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 656 (Tex. 2020).

> . . . .

> . . . In determining a Rule 91a motion, the trial court's factual inquiry is limited to "the pleading of the cause of action" and any pleading exhibits permitted by Rule 59 of the Texas Rules of Civil Procedure, which are those attached to or copied into the plaintiff's

pleadings. Tex. R. Civ. P. 59, 91a.6; *see Bethel*, 595 S.W.3d at 656; *Fiamma Statler*, 2020 WL 6334470, at *8. But the trial court's legal inquiry is not as limited. *See Bethel*, 595 S.W.3d at 656. In its legal inquiry, a trial court may additionally consider the substance of the motion to dismiss and any arguments presented at the hearing. *See id.* at 655.

. . . .

Rule 91a.6 does not allow a trial court to consider evidence in ruling on the motion.

*Galindo v. Peterson*, No. 02-23-00268-CV, 2024 WL 1792377, at *2, *5, *6 (Tex. App.—

Fort Worth Apr. 25, 2024, pet. denied) (mem. op.).

Additionally,

[t]he Texas Supreme Court has specifically held that Rule 91a "permits motions to dismiss based on affirmative defenses" if they are "conclusively established by the facts in a plaintiff's petition." *Bethel . . .*, 595 S.W.3d [at] 656 . . . (citing Tex. R. Civ. P. 91a.1). Thus, a court may grant a Rule 91a motion to dismiss on limitations grounds. *See In re Springs Condos., L.L.C.*, No. 03-21-00493-CV, 2021 WL 5814292, at *3 (Tex. App.—Austin Dec. 8, 2021, orig. proceeding [mand. denied]) (mem. op.).

*Quinn v. State Farm Lloyds*, No. 02-22-00191-CV, 2023 WL 3749932, at *10 (Tex.

App.—Fort Worth June 1, 2023, no pet.) (mem. op.).

### IV. Dismissal of Fraud Claims

In their first issue, Appellants argue that the trial court erred by dismissing their

fraud claims because their reliance on Maclay's representation was justifiable. Because

Appellants did not plead that their reliance was justifiable and did not argue justifiable

reliance at the hearing and because any reliance could not have been justifiable as a

matter of law when the written Lease directly contradicted Maclay's representation, we uphold the trial court's dismissal of Appellants' fraud claims.

## A.     Applicable Law

Fraudulent inducement is a "species" of common law fraud that shares the same basic elements. *Fort Apache Energy, Inc. v. Short OG III, Ltd.*, No. 09-25-00010-CV, 2025 WL 3169335, at *11 (Tex. App.—Beaumont Nov. 13, 2025, no pet. h.) (mem. op.) (citing *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018)).  To prevail on a cause of action for fraud, a plaintiff must show the following:

> (1) the defendant "made a material representation that was false"; (2) the defendant "knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;" (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).  The fourth element has two requirements:  the plaintiff must show that it actually relied on the defendant's representation and[] also[] that such reliance was justifiable.  *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018).

The Texas Supreme Court in *Orca Assets* further expounded on the concept of justifiable reliance:

> Justifiable reliance usually presents a question of fact.  *See Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 584 (Tex. App.—San Antonio 2011, pet. denied)[, *abrogated on other ground by Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707, 709 (Tex. 2019).]  But the element can

17

be negated as a matter of law when circumstances exist under which reliance cannot be justified. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) . . . ("We hold that, as a matter of law, th[e] reliance was not justifiable."); *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.) (holding that reliance on a representation made in a business or commercial transaction can be unjustified as a matter of law).

In determining whether justifiable reliance is negated as a matter of law, courts "must consider the nature of the [parties'] relationship and the contract." *AKB*, 380 S.W.3d at 232. "In an arm's-length transaction[,] the defrauded party must exercise ordinary care for the protection of his own interests. . . . [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Westergren*, 453 S.W.3d at 425 (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). And when a party fails to exercise such diligence, it is "charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated." *See AKB*, 380 S.W.3d at 232. To this end, that party "cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations." *See Shafipour v. Rischon Dev. Corp.*, No. 11-13-00212-CV, 2015 WL 3454219, at *8 (Tex. App.—Eastland May 29, 2015, pet. denied) (mem. op.).

*Id.* at 654.

The supreme court then explained how a direct contradiction precludes justifiable reliance as follows:

"[A]s Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Westergren*, 453 S.W.3d at 424–25 (citing *Thigpen*, 363 S.W.2d at 251).

[A] party to an arm's[-]length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests. . . . Therefore, reliance upon an oral representation that is directly contradicted by the express,

18

> unambiguous terms of a written agreement between the parties is not justified as a matter of law. . . . If written contracts are to serve a purpose under the law, relative to oral agreements, it is to provide greater certainty regarding what the terms of the transaction are and that those terms will be binding, thereby lessening the potential for error, misfortune, and dispute. . . . [A] party who enters into a written contract while relying on a contrary oral agreement does so at its peril . . . .

> *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858–59 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)[ (en banc op. on reh'g)].

*Id.* at 658.

## B. Analysis

A review of Appellants' petition reveals that the allegations therein together with the inferences reasonably drawn from them, even if taken as true, are insufficient to establish justifiable reliance. Appellants acknowledge in their brief that they were required to prove justifiable reliance, but they failed to allege in their petition that their reliance on Maclay's representation was justifiable. *See Teel v. Autonation Motors, LLC*, No. 02-20-00419-CV, 2022 WL 123217, at *3 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) (noting in an appeal from a Rule 91a dismissal that appellant had not alleged that his reliance on appellee's representations was justifiable and that justifiable reliance is an element of fraud).[6]

---

[6]Appellants argued at the hearing that "justification" is a fact question, and this misunderstanding possibly explains why they chose not to amend their petition prior to the hearing. *See Teel*, 2022 WL 123217, at *3 (stating that because appellant could have amended his pleadings to add allegations of justifiable reliance before the

Moreover, as noted above, it is well-established that a party cannot justifiably rely upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties. *See Orca Assets*, 546 S.W.3d at 658; *Cantu v. Falcon Int'l Bank*, No. 04-17-00467-CV, 2018 WL 1831651, at *2 (Tex. App.—San Antonio Apr. 18, 2018, pet. denied) (mem. op.) (collecting cases). On appeal, Appellants respond to this well-established maxim by providing conclusory statements and then pointing back to the Lease. Appellants' response backfires because it highlights that Maclay's oral representation was directly contradicted by the express terms of the Lease; his representation was never incorporated into the Lease.

Here, Appellants' argument is as follows:

Appellants' reliance on Appellees' false representation was justifiable and reasonable even though the representation was not expressly stated in the lease contract. *It was reasonable for Appellants to rely on Appellees' representation that the lease contract would not be enforced if Dr. Lozovyy could not obtain hospital privileges because the only way to further the purpose of the lease contract was for Dr. Lozovyy to obtain hospital privileges.* In fact, the lease contract provided in pertinent part that HRPD and Dr[.] Lozovyy were prohibited from using the lease premises for anything else other than hospital services. The lease contract also stated Dr. Lozovyy was required to obtain privileges to use the premises. [Emphasis added.]

---

Rule 91a hearing but did not, the trial court did not err by dismissing this claim under Rule 91a); *see also Dailey v. Thorpe*, 445 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining that Rule 91a contemplates that a plaintiff faced with a motion to dismiss may choose to either nonsuit or amend the challenged causes of action prior to the motion hearing but that the rule does not allow the plaintiff an opportunity to cure any defects after the fact).

Yet, Appellants acknowledge that they took possession under the Lease and operated in a way that showed themselves bound by its terms in full knowledge that they might not meet a covenant required in the Lease that all persons occupying the premises hold hospital privileges.

Further, no contingency was added to the Lease to address the possibility that privileges would not be obtained. Instead, the Lease provided a period of time to obtain privileges and retained the following covenant: "to continuously use and occupy the Premises and to restrict the activities conducted in the Premises to the practice of medicine reasonably related to a service line of an acute care hospital on the Baylor Regional Medical Center at Grapevine Campus . . . (hereinafter referred to as . . . 'a Hospital')." And the Lease was unambiguous regarding what privileges were required when it provided that "[a]ll persons or entities providing physician services in the Premises must provide medical services reasonably related to a service line of a Hospital and be either (a) a physician that holds medical active or courtesy staff privileges at a Hospital." Once the Lease became binding, nothing in these provisions indicated that Appellants would be free from their obligations to pay rent should the contingency in the Lease—that privileges would be obtained—not come to pass.

In essence, Appellants acknowledge that they took a gamble. They entered into a binding agreement to lease the space in order to obtain an immediate advantage from that occupancy, knowing that a situation existed that could place them in breach of the Lease's covenants and knowing that the Lease gave them only a limited amount

21

of time to satisfy the covenant. In the face of that uncertainty, they signed and began performance of the Lease, thus subjecting themselves to being bound by a term under which their unlicensed state put them in breach. They now claim that there was an alleged but undocumented promise that the Lease term would not be enforced should they be unable to perform it.

As shown at the hearing, Appellants failed to exercise ordinary care to protect their own interests; instead, they put their confidence in Maclay's statement. As explained above, "[a] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Westergren*, 453 S.W.3d at 425 (quoting *Thigpen*, 363 S.W.2d at 251). And as pointed out by the Property Appellees' counsel at the hearing, Dr. Lozovyy is a sophisticated party, and thus her knowledge, experience, and background warranted her investigation into any representations made by the leasing agent's representative before acting in reliance on such representations. *See Shafipour*, 2015 WL 3454219, at *8. Dr. Lozovyy's failure to exercise reasonable diligence means that she is "charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated." *See AKB*, 380 S.W.3d at 232.

Appellants further argue in their brief that they were justified in relying on Maclay's statements because he was legally obligated to act honestly and competently as the holder of a real-estate license under Texas Occupations Code Section 1101.652(b)(1), but this argument alleges facts that were not pleaded in Appellants'

22

petition nor raised at the hearing and are thus beyond our review. *See generally* Tex. R. Civ. P. 91a.6 (stating that trial court must decide a Rule 91a motion based solely on the pleading of the cause of action, together with any pleading exhibits).[7]

Accordingly, we hold that Dr. Lozovyy's reliance on Maclay's oral representation—which was directly contradicted by the express, unambiguous terms of the Lease—was not justified as a matter of law. *See Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019) ("Because [appellee's] claim of fraudulent inducement is directly contradicted by the contract's terms, we agree that there could be no justifiable reliance here as a matter of law."); *Orca Assets*, 546 S.W.3d at 660 (stating that appellant needed to protect its own interests through the exercise of ordinary care and reasonable diligence rather than blindly relying upon another party's vague assurances and holding that appellant's failure to do so precluded its claim of justifiable reliance as a matter of law).

We overrule Appellants' first issue.

---

[7]Just as they did at the hearing, Appellants mention parol evidence in their brief. To the extent that Appellants desire this court to rely on parol evidence to establish that the Lease was induced by fraud—an argument that they made at both the hearing and in their brief—we cannot do so as evidence cannot be considered in deciding a Rule 91a motion to dismiss. *See* Tex. R. Civ. P. 91a.6 ("Except as required by 91a.7 [dealing with attorney's fees and costs], the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59."). And, as noted above, Appellants did not attach any exhibits to their petition.

## V. Dismissal of DTPA Claim

In their second issue, Appellants argue that the trial court erred by dismissing their DTPA claim because the discovery rule tolled the statute of limitations. As shown at the hearing, Appellants (who were sophisticated but failed to hire counsel for the lease negotiations) took Maclay's word and exercised no diligence to determine whether his statement, which directly contradicted the Lease, was incorrect. As discussed below, limitations are not tolled if the plaintiff takes no action to determine whether she has been deceived, and thus the trial court did not err by dismissing Appellants' DTPA claim.

### A.  Applicable Law

All DTPA actions "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." Tex. Bus. & Com. Code Ann. § 17.565. Causes of action accrue, and limitations begin to run, when facts come into existence that authorize a claimant to seek a judicial remedy. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 202 (Tex. 2011) (op. on reh'g). That is, accrual occurs when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not occurred. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016); *see also*

*Waterstone on Lake Conroe, Inc. v. Dewberry*, No. 09-22-00020-CV, 2023 WL 8630971, at

*7 (Tex. App.—Beaumont Dec. 14, 2023, pet. denied) (mem. op.).

The Texas Supreme Court has recognized the discovery rule as a doctrine that

may apply in very limited circumstances to extend the statute of limitations:

> Under the . . . discovery rule, the cause of action does not accrue until the injury could reasonably have been discovered. The discovery rule is applied categorically to instances in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." An injury is not inherently undiscoverable when it is the type of injury that could be discovered through the exercise of reasonable diligence.

*BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65–66 (Tex. 2011) (citations and

footnotes omitted). Applications of the rule should be "few and narrowly drawn."

*S.V. v. R.V.*, 933 S.W.2d 1, 25 (Tex. 1996).

The discovery rule accrual date has also been expressed in terms of "inquiry

notice." *Riverside Strategic Cap. Fund I, L.P. v. CLG Invs., LLC*, 722 S.W.3d 27, 36 (Tex.

Bus. Ct. 2025) (quoting *United Healthcare Servs., Inc. v. First St. Hosp. LP*, 570 S.W.3d

323, 336 (Tex. App.—Houston [1st Dist.] 2018, pet. denied)).[8] Under this approach,

knowledge of facts that would lead a reasonably prudent person to inquire and to

discover the cause of action within the statute of limitations period (critical date) is

equivalent to knowledge of the cause of action for limitations purposes. *Id.* The

inquiry into whether the plaintiff should have discovered the injury is objective and is

---

[8]*See United Healthcare Servs.*, 570 S.W.3d at 336 (noting that courts use varying terminology to express and apply the discovery rule, including "reasonable diligence," "constructive notice," and "inquiry notice").

"not an inquiry into the plaintiff's subjective belief as to whether the injury could be remedied affordably," and the parties' sophistication may be considered in determining whether the discovery rule has been negated. *Est. of Jobe v. Berry*, 428 S.W.3d 888, 903 (Tex. App.—Texarkana 2014, no pet.) (quoting *J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 197 (Tex. App.—Houston [14th Dist.] 2006, no pet.)).

**B.  Analysis**

The timeline in Appellants' petition shows that Maclay's alleged misrepresentation was made in May 2022 and that Appellants signed the Lease the same month; they did not, however, file suit until October 2024.  Based on those dates, Appellants sued more than two years after the deceptive representation was made.  Thus, absent a theory to extend limitations, Appellants' DTPA claim is time barred.

Here, Appellants rely on the discovery rule to extend limitations, claiming that they did not discover Maclay's "misrepresentation and deception [until] December 2022 when HRT [Properties] filed an action against Appellants even though [the Property] Appellees [had] represented [that] they would not enforce the [L]ease."  Appellants further claim that "[t]here was no other time [that they] could have reasonably known [that Maclay's] representation was false before it was determined that Dr. Lozovyy could not in fact obtain hospital privileges."  Appellants ignore that they blindly relied on a statement made by a person who was, generally speaking, on the landlord's team even though that statement directly contradicted the Lease's

26

written terms. *See generally El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 811 (Tex. 2012) ("Sophisticated parties, like all parties to a contract, have 'an obligation to protect themselves by reading what they sign.'" (quoting *Thigpen*, 363 S.W.2d at 253)).

The Property Appellees point to an analogous case from the Southern District of Texas, applying Texas law, in which the court granted summary judgment on limitations regarding a DTPA claim based on a life-insurance policy. *See Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686 (S.D. Tex. 2002). The court granted the summary judgment because the plaintiffs had failed to exercise reasonable diligence to discover alleged false oral statements by reviewing their written policy when they bought it in 1992 and by failing to sue until 2000 when they learned of the alleged misrepresentations in 1997. *Id.* at 692–95, 704. Specifically, the court noted that "even a cursory review of the Policy and Application informed [the p]laintiffs that [the insurance representative's] oral representations did not accurately reflect the written Policy" and that "[t]he Policy terms thus [we]re easily discoverable." *Id.* at 699. The court further explained why the discovery rule did not apply to the plaintiffs' fraud claims:[9]

> [The p]laintiffs also are not entitled to rely on the discovery rule to toll the fraud limitations period because [the p]laintiffs did not act with reasonable diligence to discover the alleged misrepresentations. . . . [The

[9]Here, the fraud claims and the DTPA claim were alleged based on the same facts, so it is instructive to consider *Hunton*'s explanation on the application of the discovery rule to both fraud claims and DTPA claims.

p]laintiffs, according to their own testimony, did nothing regarding the Policy, except make payments according to the original premium schedule. . . . [The p]laintiffs failed to exercise reasonable diligence by relying solely on [appellee's representative's] oral statements regarding the Policy attributes.

*Id.* at 701 (footnotes omitted).

As to the plaintiffs' DTPA claim, the court stated that

[s]ince the alleged misrepresentations were all made in connection with [the p]laintiffs' decision to purchase the Policy in 1992, the DTPA . . . claims are barred by the statute of limitations unless the discovery rule applies.

The discovery rule expressed in [the DTPA statute] and interpretive case law does not assist [the p]laintiffs. As discussed above, [the p]laintiffs failed to exercise reasonable diligence to discover the alleged falsity of the statements by reviewing the written Policy.

*Id.* at 704.

The same outcome is warranted here based on the allegations in the petition before us. Any deception in Maclay's statement was not inherently undiscoverable; instead, the Lease was "readily accessible" and available to Appellants, and a comparison of Maclay's statement to the Lease would have uncovered the wrong. As such, reasonable diligence can be determined as a matter of law under these facts. *See In re Hoskins*, No. 13-18-00296-CV, 2018 WL 6815486, at *8 (Tex. App.—Corpus Christi–Edinburg Dec. 27, 2018, orig. proceeding [mand. denied]) (mem. op.). Said another way, reasonable diligence would have uncovered the wrong within the limitations period because Appellants had actual or constructive notice of the alleged injury-causing actions—Maclay's statement. *See Boroja v. Le Roux*, No. 03-23-

28

00789-CV, 2025 WL 777729, at *4 (Tex. App.—Austin Mar. 12, 2025, no pet.) (mem. op.) ("An injured party's actual knowledge of alleged injury-causing conduct starts the clock on the limitations period, irrespective of the potential effect of fraudulent concealment or the discovery rule on limitations."). And just as in *Hunton*, Appellants failed to exercise reasonable diligence to discover the alleged falsity of Maclay's statement by comparing it to the Lease. *See generally In re Longoria*, 470 S.W.3d 616, 632 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding) ("[A] party who signs a contract is presumed to know its contents and its legal effects.").

Accordingly, we conclude that the accrual of Appellants' DTPA claim was not tolled because they are deemed to have failed to exercise reasonable diligence as a matter of law. *See Boroja*, 2025 WL 777729, at *4. The trial court therefore did not err by determining that dismissal of Appellants' DTPA claim—which was filed more than two years after the deceptive statement was made—was proper. Accordingly, we overrule Appellants' second issue.

## VI.  Conclusion

Having overruled Appellants' two issues, we affirm the trial court's judgment dismissing their claims against the Property Appellees.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered:  January 30, 2026

29